573 F.2d 725
 11 ERC 1889, 8 Envtl. L. Rep. 20,311
 CROSS-SOUND FERRY SERVICES, INC., Petitioner,
v.
The UNITED STATES of America and Interstate Commerce
Commission, Respondents,
National Railroad Passenger Corporation (AMTRAK) and Mascony
Transport and Ferry Service, Inc., et al., Intervenors.
 No. 607, Docket 77-4162.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 8, 1977.
Decided March 13, 1978.
 
 Peter A. Greene, Washington, D. C. (Caldwell & Greene, Washington, D. C.), for petitioner, Cross-Sound Ferry Services, Inc.
 Cadwalader, Wickersham & Taft, New York City, John J. Walsh and Howard W. Burns, New York City, on brief for Cross-Sound Ferry Services, Inc. and Shelter Island and Greenport Ferry Co.
 Gordon P. MacDougall, Washington, D. C., on brief for The Bridgeport and Port Jefferson Steam-Boat Co.
 Robert W. Tasker, Greenport, N. Y., on brief for Shelter Island and Greenport Ferry Co.
 John J. Munzel, Riverhead, N. Y., for Incorporated Village of Greenport.
 Ellen K. Schall, Atty., I. C. C., Washington, D. C. (Mark L. Evans, Gen. Counsel, Henri F. Rush, Associate Gen. Counsel, John H. Schenefield, Asst. Atty. Gen., Robert B. Nicholson and Andrea Limmer, Attys., Dept. of Justice, Washington, D. C., of counsel), for Interstate Commerce Commission and The United States of America.
 Arthur D. Bernstein, Washington, D. C. (Galland, Kharasch, Calkins & Short, Washington, D. C., Robert W. Ginnane and Olga Boikess, Washington, D. C., of counsel), for intervenor Mascony Transport and Ferry Service, Inc.
 Frank J. Weiner and Wesley S. Chused, Boston, Mass. and Richard T. Haefeli, Riverhead, N. Y. (McNulty, DiPietro, Nesci & Haefeli, Riverhead, N. Y.), on brief for intervenor Mascony Transport and Ferry Service, Inc.
 Peter R. Reilly, Counsel, National Railroad Passenger Corp., Washington, D. C., for intervenor, National Railroad Passenger Corporation.
 Before FRIENDLY, SMITH and TIMBERS, Circuit Judges.
 SMITH, Circuit Judge:
 
 
 1
 This is a petition for review of orders issued by the Interstate Commerce Commission ("ICC") granting Mascony Transport and Ferry Service, Inc. ("Mascony") a conditional certificate of public convenience and necessity, pursuant to 49 U.S.C. § 909(c).[1]
 
 
 2
 Petitioners Cross-Sound Ferry Services, Inc. ("Cross-Sound"), successor-in-interest to New London Freight Service, Inc. ("NLFL"), the Bridgeport and Port Jefferson Steamboat Co. ("B&PJ"), the Incorporated Village of Greenport ("VG"), and the Shelter Island and Greenport Ferry Co. ("SI&G") oppose the ICC's grant of the certificate to Mascony.[2]
 
 
 3
 This court has jurisdiction over the petition pursuant to 28 U.S.C. §§ 2321(a) and 2342.
 
 
 4
 Petitioners argue here that the grant of operating rights was invalid for three principal reasons:
 
 
 5
 (1) The ICC acted arbitrarily and capriciously in permitting Mascony to offer additional evidence after the close of the record, while forbidding the admission of additional evidence offered by the petitioners.
 
 
 6
 (2) The ICC did not act in conformity with the requirements of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq.
 
 
 7
 (3) The ICC erred in finding that Mascony was "fit, willing, and able properly to perform" the requested service.
 
 
 8
 We have examined the extensive record in this case, and find that the ICC acted properly and within the scope of its discretion in granting Mascony a certificate of public convenience and necessity which was limited to a three-year term. Accordingly, we deny the petition.
 
 History and Facts of the Case
 
 9
 Because the petitioners' argument turns, in large measure, on claimed procedural irregularities in the ICC proceedings, it is necessary to recount the procedural history of this case in some detail.
 
 
 10
 The Mascony Transport and Ferry Service, Inc. filed an application with the ICC on May 29, 1973, seeking authority:
 
 
 11
 to engage in operation, in interstate or foreign commerce, as a common carrier by water in the transportation of general commodities and passengers by self-propelled vessels, between the ports of New London, Conn., and Greenport, Long Island, N. Y. . . .
 
 
 12
 This application was opposed by NLFL (and later by its successor in interest, Cross-Sound, which was substituted as a party in these proceedings on November 19, 1976) and B&PJ, and by intervenors below, SI&G and the East End Supply Co. Also intervening were the Connecticut Department of Transportation, the New York Department of Transportation, and the Planning Board of the Village of Greenport.
 
 
 13
 Oral hearings were held before Administrative Law Judge David H. Allard during the period from October, 1973 to February, 1974. By order issued March 26, 1974, the record in these proceedings was closed as of March 19, 1974, with briefs to be submitted some two months later.[3]
 
 
 14
 On June 19, 1974, the ALJ denied Mascony's application because of "operational considerations: safety at New London and environmental at Greenport."
 
 
 15
 Mascony filed exceptions to the decision, and petitioned the ICC to reopen the record for receipt of additional evidence. On October 22, 1975, the ICC's Appellate Division 1 ordered the reopening of the record to accept a limited amount of evidence from Mascony, and directed that an environmental impact study be conducted pursuant to the requirements of the National Environmental Policy Act of 1969, 42 U.S.C. § 4321 et seq.
 
 
 16
 Cross-Sound, successor in interest to NLFL, and B&PJ then petitioned for reconsideration of the October 22 order, and sought to reopen the record for receipt of evidence bearing on "changed circumstances" in their provision of transport services.
 
 
 17
 The ICC issued a draft environmental impact statement ("EIS") on February 3, 1976, and solicited comments from all interested parties. Comments were subsequently filed by many of the principals in this case. A final EIS, which reflected the consideration of all comments received by the ICC, was issued in June, 1976.
 
 
 18
 On November 19, 1976, Appellate Division 1, reversing the Administrative Law Judge's decision on June 19, 1974, granted Mascony a three-year certificate of convenience and necessity. Commissioner Murphy dissented from this order. The order further denied petitioners' request for reconsideration of the October 22 order, and denied their request to reopen the proceedings for further hearings. The Appellate Division reasoned that petitioners had not been denied an opportunity to rebut any evidence tendered by Mascony after the close of oral hearings, and that, because of the already protracted nature of the proceedings, it was within its discretion to preclude the introduction of evidence of changed circumstances.
 
 
 19
 On December 20, 1976, the petitioners moved for reconsideration of the Appellate Division's November 19 order. The Appellate Division denied this request, but later reopened the proceedings for the receipt of verified statements and verified replies relating to Mascony's terminal sites at Greenport, N.Y. and New London, Conn. These statements were subsequently filed. Mascony's "rebuttal verified statement" was rejected by the Commission.
 
 
 20
 In June, 1977, the National Railroad Passenger Corp. (Amtrak) filed a petition to intervene in this matter. This request was denied on the ground that issues sought to be raised by Amtrak had already been adequately considered in connection with the Commission's EIS. On June 16, 1977, Appellate Division 1 affirmed its earlier decision granting Mascony a conditional operating certificate.
 
 
 21
 Petitioners again requested a reconsideration of the Appellate Division's decision, and the U.S. Department of Transportation ("DOT") petitioned for leave to intervene. The Appellate Division denied these petitions.
 
 
 22
 In September, 1977, the Commission denied requests by Cross-Sound and Amtrak for a finding that the proceeding presented an issue of "general transportation importance," and denied a request for a stay of its order pending appeal. This court, too, denied petitioners' request for such a stay.
 
 
 23
 This petition followed.
 
 The Nature of the Proposed Service
 
 24
 Mascony seeks authorization to operate a commercial ferry service between New London, Conn. and Greenport, N.Y. In March, 1973, it purchased the SS New Jersey, a vessel with a licensed capacity of 100 cars and 800 passengers, and contracted to acquire other vessels from the Delaware River and Bay Authority. The corporation has yet to procure safety and operating licenses from a variety of federal, state and local government agencies. In addition, it is unclear at this time whether Mascony will be able to procure suitable docking sites in New London and Greenport. Much of the testimony in this case concerns the practical feasibility of adopting alternative docking facilities.
 
 
 25
 Opposition to Mascony's planned ferry service is based primarily on the desire by Cross-Sound, which operates ferries between New London, Conn. and Orient Point, N.Y., and B&PJ, which operates ferries between Bridgeport, Conn. and Port Jefferson, N.Y., to minimize commercial competition.
 
 
 26
 In addition, the Village of Greenport, SI&G, Amtrak, and DOT oppose the operation of the new ferry for a variety of environmental and safety reasons.
 
 Discussion
 
 27
 It is necessary at the outset for us to address briefly the scope of review which is appropriate in a case of this type. The Administrative Procedure Act, 5 U.S.C. § 706, provides that:
 
 The reviewing court shall
 
 28
 (2) hold unlawful and set aside agency action, findings, and conclusions found to be
 
 
 29
 (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .
 
 
 30
 (or)
 
 
 31
 (E) unsupported by substantial evidence . . . .
 
 
 32
 The standard of review here is narrow. Once it has been determined that decisions are supported by substantial evidence,
 
 
 33
 (a) reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." Citizens to Preserve Overton Park v. Volpe (401 U.S. 402) at 416 (91 S.Ct. 814 at 824, 28 L.Ed.2d 136) ((1971)). The agency must articulate a "rational connection between the facts found and the choice made." Burlington Truck Lines v. United States, 371 U.S. 156, 168 (83 S.Ct. 239, 246, 9 L.Ed.2d 207) (1962). . . . (W)e will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. Colorado Interstate Gas Co. v. FPC, 324 U.S. 581, 595 (65 S.Ct. 829, 836, 89 L.Ed. 1206) (1945). (Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., 419 U.S. 281, 285-86, 95 S.Ct. 438, 442, 42 L.Ed.2d 447 (1974)).
 
 
 34
 The test here is primarily one of rationality. If the Commission based its order on substantial relevant evidence, fairly ascertained, and if it has made no clear error of judgment, this court is not authorized to overturn that order.
 
 A.
 
 35
 Petitioners argue that the ICC was unfairly selective in its admission of evidence after the close of the record in these proceedings. They assert that evidence favorable to Mascony was received, while evidence offered by the petitioners was systematically rejected. This, they contend, was arbitrary, capricious, an abuse of discretion, and represented a denial of due process of law.
 
 
 36
 In effect, two different, but related, claims are being urged here. In the first, petitioners imply that their inability to submit additional evidence precluded them from rebutting claims advanced by Mascony in evidence which was accepted by the Commission. This inability to offer rebuttal evidence was, it is asserted, fundamentally unfair and a denial of due process rights.
 
 
 37
 In the second claim, petitioners imply that they should have been permitted to introduce evidence as to "changed circumstances," and that the failure to permit updating of the record with respect to their enhanced ability to perform constituted an abuse of discretion.
 
 
 38
 An examination of the record in these proceedings shows that the first claim is without merit. Following the conclusion of full hearings, which are recorded in over 2500 pages of testimony and exhibits, Mascony was permitted to introduce additional evidence on two occasions, by means of ICC orders dated October 22, 1975 and April 8, 1977 (App. at 249 and 356). In addition, the Commission authorized the preparation of an environmental impact statement, as required by law. The evidence accepted by order of October 22, 1975 was later rejected except insofar as it pertained to environmental matters subject to rebuttal by the petitioners. See 353 ICC Reports 60 at 63 (November 3, 1976) (App. at 324). Evidence accepted by order of April 8, 1977 was subject to rebuttal by verified replies tendered on May 17-19, 1977 (App. at 359, 361-366). See 5 U.S.C. § 556(d). Comments were invited in response to the draft EIS filed on February 3, 1976, and all comments received were incorporated in the final EIS. Thus there is no truth to the contention that petitioners were not able to respond to additional evidence tendered to the Commission after the close of hearings in this case.
 
 
 39
 With respect to petitioners' claim that they should have been permitted to prove "changed circumstances," we believe that the situation is governed by ICC v. Jersey City, 322 U.S. 503, 514-15, 64 S.Ct. 1129, 1134, 88 L.Ed. 1420 (1944), in which Mr. Justice Jackson indicated:
 
 
 40
 It has been almost a rule of necessity that rehearings were not matters of right, but were pleas to discretion. And likewise it has been considered that the discretion to be invoked was that of the body making the order, and not that of a reviewing body.
 
 
 41
 These sentiments have recently been reiterated in Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra, 419 U.S. at 294-96, 95 S.Ct. 438, a case very similar in substance to the one at bar. Bowman indicates that, as a general matter, administrative agencies have broad discretion with respect to the updating of evidence, but also notes that evidence of improved service following notice of a hearing on the matter is particularly suspect. See Bowman, supra, 419 U.S. at 286-89, 95 S.Ct. 438. This provides further support for the Commission's refusal to open the record for receipt of evidence as to Cross-Sound's recently improved ferry service.
 
 
 42
 Finally, it is perfectly legitimate for the Commission to distinguish issues of need from issues of ability and fitness. Evidence of improved service offered by Cross-Sound goes primarily to the issue of need; evidence of environmental hazard and ability to operate safely offered by Mascony goes to the issue of fitness. The ICC does not abuse its discretion in closing the record as to need, while reconsidering matters of fitness. No unfairness is present in this instance, and the practice represents a rational approach to complex decision-making. Nothing in Delta Airlines, Inc. v. CAB, 182 U.S.App.D.C. 295, 561 F.2d 293 (1977), cert. denied sub nom. National Airlines, Inc. v. CAB, --- U.S. ----, 98 S.Ct. 889, 54 L.Ed.2d 796 (1978), a case which requires fairness in the updating of agency proceedings, contradicts this conclusion.
 
 B.
 
 43
 Petitioners argue further that the grant of operating rights to Mascony was invalid because the ICC failed to satisfy the procedural requirements of the National Environmental Policy Act of 1969 ("NEPA"), 42 U.S.C. § 4321 et seq. They argue that regulations adopted by the ICC pursuant to the statute require that final environmental impact statements be submitted to the public at least 15 days prior to required oral hearings on those statements, 49 C.F.R. § 1108.16(b), and that at such hearings, any party must be permitted to offer evidence and cross-examine witnesses with regard to environmental issues, 49 C.F.R. § 1108.17(b). In the instant case, it is averred, no public hearing was held either before or after the issuance of the final EIS. Thus petitioners allege that they were denied an opportunity to subject the EIS to the "scrutiny of cross-examination and confrontation," in contravention of federal law.
 
 
 44
 We cannot agree with the petitioners' conclusions. NEPA requires that in the case of "major Federal actions significantly affecting the quality of the human environment" federal agencies must prepare "a detailed statement by the responsible official on (i) the environmental impact of the proposed action . . . ." 42 U.S.C. § 4332(2)(C).
 
 
 45
 An EIS is required only in the case of major federal actions significantly affecting the quality of the human environment. The identification of such actions is the responsibility of the relevant federal agency "to be carried out against the background of its own particular operations. . . . The words 'major' and 'significantly' are intended to imply thresholds of importance and impact that must be met before a statement is required." 40 C.F.R. § 1500.6 (advisory regulations of the Council on Environmental Quality).
 
 
 46
 In Hanly v. Kleindienst, 471 F.2d 823 (2d Cir. 1972), cert. denied, 412 U.S. 908, 93 S.Ct. 2290, 36 L.Ed.2d 974 (1973), this court indicated that an agency's threshold determination that an EIS is or is not required should ordinarily be based on consideration of two factors: "(1) the extent to which the action will cause adverse environmental effects in excess of those created by existing uses in the area affected by it, and (2) the absolute quantitative adverse environmental effects of the action itself, including that cumulative harm that results from its contribution to existing adverse conditions or uses in the affected area." 471 F.2d at 830-31.
 
 
 47
 Furthermore, before such a threshold determination is made, an agency must give public notice of the proposed federal action, and an opportunity to submit relevant data "which might bear upon the agency's threshold decision." A hearing is not ordinarily required in this instance, although it may often be advisable. Having fulfilled these procedural requirements, an agency's determination that an impact statement is not required will be overturned by a reviewing court only if it is arbitrary, capricious, or an abuse of discretion.
 
 
 48
 In the instant case, petitioners were, at all relevant times, on notice with regard to the proposed certification of Mascony. The Commission, after issuing its draft EIS, solicited comments from all interested parties. It appended all comments received to the final EIS, and addressed each of the contentions put forward by commenting parties. In its decision of November 3, 1976, 353 ICC Reports 60, the Commission carefully considered the environmental impact of the proposed action, both in relation to present conditions and in light of "absolute quantitative adverse environmental effects." The Commission concluded that "this decision is not a major Federal action significantly affecting the quality of the human environment."
 
 
 49
 It is conceded that the Commission's conclusion can reasonably be disputed. Indeed, it is questioned in a dissenting opinion by Commissioner Murphy. The proposed action comes within the "gray area," in which the statutory term "significant" (and subsequent glosses on the term) are insufficiently concrete to provide a clear and absolute standard of decision. Still, it cannot be said that the Commission failed to consider relevant data, or that its decision was arbitrary, capricious, or represented an abuse of discretion. Accordingly, this court must abide by the Commission's determination, which was reached after consideration of all relevant material and in accordance with procedural requirements.
 
 
 50
 Since the proposed action is outside the terms of the Environmental Protection Act, no EIS is required, and a fortiori, petitioners have no legal right to a hearing on the environmental issues.[4]
 
 C.
 
 51
 Finally, petitioners aver that the ICC erred in finding that Mascony met the statutory requirements that it be "fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service . . . is or will be required by the present or future public convenience and necessity . . . ." 49 U.S.C. § 909(c). They indicate that Mascony has no clear legal right to any terminal site in Greenport, and that this lack of "operational feasibility" is sufficient to preclude licensure under the "able properly to perform" standard. Petitioners further allege that safety problems at the proposed Connecticut terminus are of sufficient magnitude to render Mascony unfit.
 
 
 52
 The terms "convenience and necessity" and "fit, willing, and able" are defined neither in the Interstate Commerce Act nor in the Commission's regulations. The Commission is given broad discretion in characterizing these qualities, and in determining which candidates for certificates meet the statutory requirements. ICC v. Parker, 326 U.S. 60, 65, 65 S.Ct. 1490, 89 L.Ed. 2051 (1945) (railroad). Given the nature of the judgments involved, this process necessitates a case-by-case determination.
 
 
 53
 While we do not hazard a definition of the operative statutory terms, we can say that they implicate the public need for enhanced transportation facilities and the general feasibility of proposals for future operation, as weighed against any negative impact which might be caused by the implementation of such a proposal. Bowman, supra, 419 U.S. at 292-94, 95 S.Ct. 438. The grant of a certificate is clearly not an indication that the Commission approves of all aspects of a particular plan, nor does it imply that a carrier is prepared to begin service at once. The existence of the safety and accessibility problems in the proposed sites, and the necessity of satisfying other regulatory bodies in these regards have been recognized and weighed by the Commission in its grant of the license and the time limitation it has imposed on the license. The certificate of public convenience and necessity is intended to be a necessary, but not a sufficient condition of operation. As such, it contemplates the simultaneous operation of other controls which are not primarily concerned with commercial utility.
 
 
 54
 Thus the fact that safety problems continue to exist at Mascony's Connecticut terminus, which must be resolved to the satisfaction of other regulatory bodies, and the fact that Mascony had not yet been able to obtain a docking site on Long Island free from possible restrictions are not, in themselves, sufficient to require a withdrawal of Mascony's certificate of public convenience.
 
 In the words of the Supreme Court:
 
 55
 If the Commission has "drawn out and crystallized (the) competing interests (and) attempted to judge them with as much delicacy as the prospective nature of the inquiry permits," we can require no more. (Citations omitted.) (Bowman Transportation, Inc. v. Akansas-Best Freight System, Inc., supra, 419 U.S at 293-94, 95 S.Ct. at 446)
 
 
 56
 In the instant case, the Commission did consider all factors relevant to the grant of the requested certificate. We cannot say that its decision was arbitrary, capricious, or an abuse of discretion, or that it was unsupported by substantial evidence. We, therefore, deny the petition for review.
 
 
 
 [1]
 49 U.S.C. § 909(c) provides:
 Subject to section 910 of this title, upon application as provided in this section the Commission shall issue a certificate to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if the Commission finds that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied.
 
 
 [2]
 The National Railroad Passenger Corporation (Amtrak) and the Department of Transportation sought unsuccessfully to intervene in the proceedings below. By orders dated September 27 and October 5, 1977, this court granted Amtrak's motion for leave to intervene
 
 
 [3]
 In submitting its brief, Mascony appended some evidentiary material characterized as appendices. NLFL moved to strike this material, or alternatively to reopen the record for receipt of additional evidence. The motion was dismissed as moot following Judge Allard's denial of the application
 
 
 [4]
 It might be noted parenthetically that even if the proposed action in this case had been construed as a "major Federal action," it is still highly likely that the ICC would have acted in conformity with the requirements of NEPA. There is no procedural requirement under the Act or its implementing regulations that public hearings be held in every case. See 42 U.S.C. § 4321 et seq.; 40 C.F.R. §§ 1500.7(d), 1500.9(d), 1500.10; 49 C.F.R. §§ 1108.15, 1108.16(b), 1108.17(a). NEPA requires only that an EIS "accompany (a) proposal through the existing agency review process." (Emphasis added.) 42 U.S.C. § 4332(2)(C). Unless hearings are required by statute or as a matter of due process, they are discretionary with the federal agency. See 5 U.S.C. § 554
 In the case of grants of certificates of public convenience by the ICC, neither statute nor Commission regulations requires an oral hearing. 49 U.S.C. § 909(c); 49 C.F.R. §§ 1100.247(e)(1), (3). It follows that NEPA does not itself require hearings in this context.
 Greene County Planning Board v. Federal Power Comm'n, 455 F.2d 412 (2d Cir.), cert. denied, 409 U.S. 849, 93 S.Ct. 56, 34 L.Ed.2d 90 (1972), even if still valid after Aberdeen and Rockfish RR v. Students Challenging Regulatory Agency Procedures, 422 U.S. 289, 95 S.Ct. 2336, 45 L.Ed.2d 191 (1975), is not on point. There, unlike in the instant case, the Federal Power Commission was required by its own regulations to hold hearings before granting licenses to construct high-voltage power lines. See 18 C.F.R. §§ 4.32(a) and 3.114(b).
 Harlem Valley Transportation Ass'n v. Stafford, 500 F.2d 328 (2d Cir. 1974), is similarly distinguishable. There a public hearing was required by the Interstate Commerce Act, 49 U.S.C. § 1(19). (Since repealed by Pub.L. No. 94-210, Title VIII § 801(b), 90 Stat. 127 (Feb. 5, 1976).
 On this reading, even if the grant of a certificate to Mascony had been construed as a major federal action significantly affecting the environment, the Commission still would not have been required to hold public hearings on the matter, so long as its notice and comment requirements were adhered to. 49 C.F.R. §§ 1108.14-1108.17.