**PRE–FAB TRANSIT CO., an Illinois Corporation, Petitioner,**

v.

**UNITED STATES of America and Interstate Commerce Commission, Respondents.**

No. 78–1352.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1979.

Decided March 30, 1979.

---

Chandler L. Van Orman, Washington, D. C., for petitioner.

James P. Tuite, ICC, Washington, D. C., for respondents.

Before TONE and WOOD, Circuit Judges, and EAST,* District Judge.

EAST, District Judge.

Pre-Fab Transit Co. (Pre-Fab) petitions for review of an order of the Interstate Commerce Commission (ICC) denying its application for authority to carry prefabricated buildings and related accessories from Houston, Texas to points in 14 states. We note jurisdiction under 28 U.S.C. §§ 2321 and 2342, and affirm the ICC's order.

## BACKGROUND

Pre-Fab, an Illinois corporation, is a common carrier engaged in nationwide transportation of specific commodities under authority grants from the ICC.

---

\* Honorable William G. East, Senior United States District Judge for the District of Oregon, is sitting by designation.

On October 14, 1975, Pre-Fab filed an application with the ICC for authority to transport over irregular routes: (1) buildings, complete, knocked down, or in sections, (2) building sections, and building panels, (3) parts and accessories used in the installation and completion of commodities in (1) and (2) above, and (4) metal prefabricated structural components and panels, and accessories used in the installation and completion thereof. Pre-Fab has been transporting some of these commodities under temporary and emergency temporary authority grants since 1974.

Section 207 of the Interstate Commerce Act, 49 U.S.C. § 307, provides:

"[A] certificate shall be issued to any qualified applicant therefor, authorizing the whole or any part of the operations covered by the application, if it is found that the applicant is fit, willing, and able properly to perform the service proposed and to conform to the provisions of this chapter and the requirements, rules, and regulations of the Commission thereunder, and that the proposed service, to the extent to be authorized by the certificate, is or will be required by the present or future public convenience and necessity; otherwise such application shall be denied . . . ."

The Administrative Law Judge (ALJ) found that the proposed shipments fell within the authority of "heavy haulers."[1] Because heavy haulers were already available, the ALJ concluded that Pre-Fab's services were not required by "present or future public convenience and necessity" within the meaning of § 207.

The components of the buildings Pre-Fab proposed to carry included major structural items, secondary framing members, panels, sheets and accessories. The major structural items are undisputedly within heavy hauler authority. The focus of the dispute is the panels, which are shipped in bundles which exceed 200 pounds and require use of special equipment. If these panels were merely incidental to the heavy items, heavy haulers could carry them in the same shipment regardless of whether the panels were themselves appropriate subjects of heavy hauling certificates. But under the reasoning of *Sammons Trucking, Extension— Galesburg, Ill.,* 119 MCC 826, 834–35 (1974), the bundled panels constitute too great a portion of the entire building to be considered "related and incidental" to transportation of the larger items.

An obstacle to the panels qualifying in their own right for carriage by heavy haulers is the presumption that the individual commodity is the controlling consideration in determining which carriers have authority to transport aggregated commodities. *W. J. Dillner Transfer Co.—Investigation of Operations,* 79 MCC 335, 358 (1959), aff'd 193 F.Supp. 823, (W.D.Pa.1961), and 368 U.S. 6, 82 S.Ct. 16, 7 L.Ed.2d 16 (1961). The ALJ found that the panels fit within the limited exception which allows consideration of the aggregated items as a whole when the commodities require aggregation due to their "inherent nature." *Ace Doran Hauling & Rigging Co., Investigation,* 108 MCC 717 (1969), aff'd sub nom. *Pittsburgh & New England Trucking Co. v. United States and ICC,* 345 F.Supp. 743 (W.D.Pa. 1972), aff'd, 409 U.S. 904 and 1070, 93 S.Ct. 235, 686, 34 L.Ed.2d 169, 660 (1972). With a great preponderance of the components found to be within heavy hauling authority, the accessorial items were determined to be incidental and likewise within heavy hauling operating authority.

Pre-Fab filed exceptions to the ALJ's decision, contending error in the conclusion that heavy haulers were authorized to carry the commodities. The ICC affirmed the ALJ's decision, and Pre-Fab filed this petition for judicial review.

## ISSUES ON APPEAL

1. Whether the ICC acted arbitrarily or capriciously or abused its discretion in de-

---

1. Heavy haulers or "size and weight" carriers are those authorized to carry commodities which, due to their size and weight, require the use of special equipment in loading or unloading.

parting from agency precedent to hold that the commodities were within the scope of heavy hauler certificates.

2. Whether the ICC's decision was supported by substantial evidence.

## SCOPE OF REVIEW

■ The scope of review of an order of the ICC is governed by the Administrative Procedure Act, 5 U.S.C. § 706. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 283–84, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974). The reviewing court is directed to:

"(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

"(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

" . . . [or]

"(E) unsupported by substantial evidence . . . ."

This standard of review is narrow. The Court may not substitute its judgment for that of the agency. "The purpose of Congress was to leave to the Commission authoritatively to decide whether additional motor service would serve public convenience and necessity." *ICC v. Parker,* 326 U.S. 60, 65, 65 S.Ct. 1490, 1493, 89 L.Ed. 2051 (1945).

The ICC relies on *Andrew G. Nelson, Inc. v. United States,* 355 U.S. 554, 558, 78 S.Ct. 496, 2 L.Ed.2d 484 (1958), in which the Supreme Court held that interpretations by the ICC of its own permits are controlling on the courts unless clearly erroneous. The Eighth Circuit has, in some cases, applied the clearly erroneous standard in addition to the arbitrary or capricious or substantial evidence tests. *Dart Transit Co. v. United States,* 567 F.2d 818, 820 (8th Cir. 1977); *Jones Truck Lines, Inc. v. ICC,* 563 F.2d 899, 900 (8th Cir. 1977).

In *Sawyer Transport, Inc. v. United States,* 565 F.2d 474 (7th Cir. 1977), this Court reviewed the ICC's denial of an application for a certificate of public convenience and necessity. Without expressly declaring the proper scope of review, the Court considered Sawyer's allegations that the ICC's decision was arbitrary, capricious, unsupported by substantial evidence, and not in accordance with law. We now take the opportunity afforded by Pre-Fab's petition to join the many circuits which have explicitly held that 5 U.S.C. § 706 states the proper scope of review of an ICC order.[2]

## DEPARTURE FROM AGENCY PRECEDENT

■ Administrative agencies are not bound by the doctrine of stare decisis. And "the restrictiveness of our scope of review does not permit us to reverse an ICC action merely because the decision arguably may be inconsistent with prior ICC decisions." *Sawyer,* 565 F.2d at 477. Agencies have a duty, however, to explain departures from agency norms. *Atchison, Topeka & Santa Fe Railway Co. v. Wichita Board of Trade,* 412 U.S. 800, 808, 93 S.Ct. 2367, 37 L.Ed.2d 350 (1973). "The Commission cannot disregard its own precedents but must reasonably explain an alternation of policy." *Hilt Truck Line, Inc. v. United States,* 548 F.2d 214, 216 (7th Cir. 1977).

Pre-Fab complains that the ICC's decision is inconsistent with prior decisions holding the same or similar commodities beyond heavy hauler authority. It is true that the ICC's cases dealing with authority to carry aggregated bundles are confusing and unpredictable.

In *Black—Investigation of Operations,* 64 MCC 443 (1955), the Commission was concerned with large flat thin sheets of steel and aluminum, which were bundled because

2. *See Waterways Freight Bureau v. ICC,* 183 U.S.App.D.C. 54, 58, 561 F.2d 947, 951 (1977); *Cross-Sound Ferry Services, Inc. v. United States,* 573 F.2d 725, 729 (2d Cir. 1978); *Ward Trucking Corp. v. United States,* 574 F.2d 168, 170–71 (3d Cir. 1978); *Contractors Transport Corp. v. United States,* 537 F.2d 1160, 1162 (4th Cir. 1976); *Chem-Haulers, Inc. v. United States,* 536 F.2d 610, 617 (5th Cir. 1976); *ASG Industries, Inc. v. United States,* 548 F.2d 147, 151 (6th Cir. 1977); *Tri-State Motor Transit Co. v. United States,* 570 F.2d 773, 776–77 (8th Cir. 1978); and *Short Haul Survival Committee v. United States,* 572 F.2d 240, 244 (9th Cir. 1978).

of handling difficulty and because damage to the sheets was likely if they were handled individually. The Commission distinguished between aggregation for the purpose of efficiency and aggregation required by the inherent nature of the commodity. It found that the inherent nature of the sheets required bundling; the bundles, which required use of special equipment, were, therefore, within heavy hauler authority.

*Dillner* applied the "inherent nature" test used in *Black*, but stated that *Black* represented a strictly limited exception to the general rule that the individual commodity controls a carrier's authority. 79 MCC at 358.

The leading case on this subject is *Ace Doran Hauling & Rigging Co.* Affirming the prior developments in the agency case law on aggregated items, the Commission stated:

"(1) With respect to bundled, aggregated or palletized commodities, the presumption described in the *Dillner* case, 79 MCC 335, at 358—that such shipments, in the absence of a sound basis for a contrary conclusion, are outside the scope of heavy-hauler authority—is reaffirmed without modification.

"(1a) That, again in accordance with *Dillner*, exceptions to the foregoing general rule will not be recognized when the use of aggregation is attributable solely to considerations relating to economy and efficiency; but, once a commodity's 'inherent nature' is found to necessitate aggregation, the latter concepts must be taken into account in determining the minimum size bundle required." 108 MCC at 757.

The Commission noted certain guidelines[3] to use in determining whether bundling is required by the inherent nature of an item, and explained that a case by case approach is necessary. The result has been that the outcome of subsequent cases has depended more on the record made at the hearing than on the nature of the commodity. Decisions have been dictated by whether the purpose shown for aggregation was protection of the commodity or economy and efficiency. For example, three cases dealing with panels similar to those involved here resulted in decisions holding that the bundled panels were not within the authority of heavy hauler certificates. In *Sammons Trucking, Extension* and *H. J. Jeffries Truck Lines, Inc., Extension—Ohio Buildings*, MC–113459 (May 20, 1977), the Commission found that the only reason on the record for bundling the panels was ease of handling or convenience. Protection of the panels from damage was not presented as a reason.

In *Morgan Drive-Away, Inc., Extension— 48 States*, MC–103993 (October 20, 1975), the record showed both efficiency in handling and the need to protect the commodity. The commission decided, however, that protection was a mere "resultant," whereas efficiency in handling was the "motivating" factor. The ALJ considering Pre-Fab's application rejected *Morgan's* insertion of a subjective element into the objective test of *Ace Doran*. He stated in his decision: "Whatever may be the motive of the shipper or the consequent 'resultant' of bundling or otherwise aggregating commodities, the ultimate and critical issue is whether the inherent nature of the articles requires aggregation of individual pieces in packages of a minimum size sufficient to protect each component." The ALJ concluded, in contradistinction to *Morgan*, "that if protection of the commodity is, in truth and in fact, a material and substantive element in the bundling/aggregation of commodities, which in such state weigh 200 pounds or more and require special equipment in loading or unloading, they do indeed constitute an appropriate subject for transportation in an aggregated state by carriers holding size and weight authority."

---

**3.** "(1) The basic characteristics, if any, of the commodity which occasion the use of special equipment; (2) prevailing industry practice with regard to its handling; (3) the manner in which it or analogous commodities have historically been shipped; and (4) its traditional sphere of carriage." 108 MCC at 737.

■ The evidence convinced the ALJ that "a very real purpose for bundling the sheets and panels is for the protection of the individual panels to a material and significant degree." Applying the *Ace Doran* guidelines and his revised standard regarding the protection/efficiency distinction, the ALJ concluded that aggregation of the panels was required because of their inherent nature and that they were, therefore, within heavy hauling authority. If this conclusion constitutes a departure from precedent, the departure was sufficiently explained by the ALJ whose reasoning was adopted by the Commission. The explanation was adequate to enable this Court to conclude that the Commission's order was neither arbitrary, capricious nor an abuse of discretion. In the words of the Supreme Court, "[W]e can discern in the Commission's opinion a rational basis for its treatment of the evidence, and the 'arbitrary and capricious' test does not require more." *Bowman*, 419 U.S. at 290, 95 S.Ct. at 444.

## SUBSTANTIAL EVIDENCE

■ In its review of a District Court decision setting aside an ICC order for want of substantial evidence, the Supreme Court held that the "District Court exceeded its function in reweighing the testimony, which is primarily the task of the Commission." *Ralston Purina Co. v. Louisville & Nashville Railroad Co.*, 426 U.S. 476, 477–78, 96 S.Ct. 2160, 2161, 48 L.Ed.2d 781 (1976). Our task is limited to determining if the Commission's decision is supported by substantial evidence on the record considered as a whole. *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456 (1951).

In order to reach the ultimate finding that Pre-Fab's services were not needed, the ALJ made several preliminary subfindings. At each step, he considered the evidence presented by Pre-Fab and by the five supporting shippers and 12 opposing motor carriers. The decision indicates at several points which evidence was relied upon, which was discounted, and the reasons why. Since Pre-Fab could not show that a public need was unsatisfied by the available services, that its proposed services were new or unique, or that it would be an improvement over available services, the ALJ concluded that Pre-Fab had failed to meet its burden. Each step in the ALJ's reasoning was grounded on record evidence which he found reliable. The ALJ determined that each of the proposed shipments was either within heavy hauling authority or was unnecessary for other reasons. We cannot weigh the evidence. That task is delegated to the agency which is better suited thereto.

We find the ICC's decision and order were supported by substantial evidence and determine the decision and order to be valid.

AFFIRMED.