**BENMAR TRANSPORT & LEASING CORP., Petitioner,**

v.

**INTERSTATE COMMERCE COMMISSION and United States of America, Respondents,**

**and**

**Consolidated Truck Service, Inc., Intervenor-Respondent.**

**No. 1401, Docket 78–4005.**

United States Court of Appeals, Second Circuit.

Originally Argued July 17, 1978.

Decided Aug. 16, 1978.

On Remand from the Supreme Court of The United States.

Submitted March 3, 1980.

Decided June 11, 1980.

Eugene M. Malkin, New York City, for petitioner.

Carl E. Howe, Jr., Atty., I. C. C., Washington, D. C. (Mark L. Evans, Gen. Counsel, Henry F. Rush, Associate Gen. Counsel, I. C. C., Washington, D. C., John H. Shenefield, Asst. Atty. Gen., Robert L. Thompson, Atty., Dept. of Justice, Washington, D. C., of counsel), for respondents I. C. C. and U. S. A.

Charles W. Beinhauer, New York City (Beinhauer & Rouhana, New York City, of counsel), for intervenor-respondent Consolidated Truck Service, Inc.

---

* Hon. Edward Dumbauld, Senior District Judge of the Western District of Pennsylvania, sitting by designation.

** Hon. Edmund Port, Senior District Judge of the Northern District of New York, sitting by designation.

1. The orders Benmar seeks to have set aside were served October 14, 1977, January 27, 1978, and April 18, 1978. Docket No. MC–129950 (Sub. No. 2) *Consolidated Truck Service, Inc., Extension—Points in 3 States.* This Court has jurisdiction under the Hobbs Act, 28 U.S.C. §§ 2321 and 2342.

2. Section 203(a)(15) of the Interstate Commerce Act provided:

Before MESKILL, Circuit Judge, and DUMBAULD * and PORT,** District Judges.

MESKILL, Circuit Judge:

This action, now before us on remand from the Supreme Court, was initiated by Benmar Transport and Leasing Corp., a contract carrier seeking judicial review of certain orders of the Interstate Commerce Commission.[1] The orders appealed from are affirmed.

## BACKGROUND

Although the rather convoluted procedural history of this case has been determined by the Supreme Court to be largely irrelevant to its proper disposition, a summary of that history is necessary to set the stage for today's decision.

On July 21, 1976, Consolidated Truck Service, Inc. filed with the Interstate Commerce Commission an application for authority to operate as a contract carrier by motor vehicle. *See* Section 203(a)(15) of the Interstate Commerce Act, 49 U.S.C. § 303(a)(15) (repealed October 17, 1978).[2] Specifically, Consolidated requested a permit to transport "such commodities as are dealt in by department stores," between certain listed locations, under a continuing contract with Jubilee Shops, Inc. of New Jersey, a retail merchandiser.

Although Benmar had previously handled all of Jubilee's trucking requirements, Jubi-

The term "contract carrier by motor vehicle" means any person which engages in transportation by motor vehicle of passengers or property in interstate or foreign commerce, for compensation (other than transportation referred to in paragraph (14) of this subsection and the exception therein), under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer. 49 U.S.C. § 303(a)(15) (repealed October 17, 1978).

lee supported Consolidated's application on the ground that Benmar was not authorized to provide the augmented service necessary to support the shipper's planned expansion into new lines of merchandise.[3] In its papers in opposition to Consolidated's application Benmar disagreed, contending that it was indeed authorized by permit to transport all the commodities that Jubilee shipped or could reasonably expect to ship in the future. Commission Review Board No. 1, evaluating the evidence in light of the criteria set out in Section 209(b) of the Act,[4] determined that a grant "would almost certainly divert traffic" from Benmar and that the evidence was not sufficient to demonstrate that the changing nature of Jubilee's requirements was a significant factor. Accordingly, Consolidated's application was denied by order dated May 12, 1977.

Consolidated filed a petition for reconsideration. Division 1, acting as an Appellate Division, reversed the order of the Review Board and granted the application, stating, in an order served October 14, 1977, that the changing character of Jubilee's requirements *was* a significant factor and that a denial of Consolidated's application would have an adverse effect upon Jubilee by burdening its product line expansion.[5] When Benmar's petition for reconsideration of the order of Division 1 was denied, Benmar filed a petition for judicial review in this Court.

3. Jubilee's statement in support of Consolidated's application read in part:
   Benmar now services us, but its authority is restricted to "*such commodities as are dealt in by retail ready-to-wear apparel stores and supplies used in the conduct of such business.*" We have spoken to these people relative to this restricted authority, and they have advised that it is their belief that they can now transport our merchandise. While this is true, now when we are a "ready-to-wear apparel store," it does not fit into our future picture. Our company is expanding into new lines of merchandise. Our line of merchandise . . . is now in the department store field rather than the "ready-to-wear apparel store" field. For example, we are now ready to handle a line of toys, juvenile furniture, and sporting goods. We are now ready to transport equipment for these stores in addition to supplies. Benmar will continue to be used when they can, but with the expansion of our line of commodities and additional tonnage we do not believe that they will be able to provide service for our future expansion program. Therefore, the additional need for the Consolidated service.

4. Section 209(b) directed that permits be issued to qualified and able applicants only if the Commission determined that the operation thus authorized would be consistent with the public interest and national transportation policy. The statute specified five factors to be considered by the Commission in making such a determination:
   In determining whether issuance of a permit will be consistent with the public interest and the national transportation policy declared in this Act, the Commission shall consider the number of shippers to be served by the applicant, the nature of the service proposed, the effect which granting the permit would have upon the services of the protesting carriers and the effect which denying the permit would have upon the applicant and/or its shipper and the changing character of that shipper's requirements.
   49 U.S.C. § 309(b) (repealed October 17, 1978; recodified in 49 U.S.C. § 10923(b)(2)).

5. The Division's order read in pertinent part:
   We conclude that the review board erred in evaluating the fourth and fifth criteria of section 209(b). The board implied that a denial would have no adverse affect [sic] on the supporting shipper. The board also concluded that the changing character of shipper's requirements was not a significant factor. These two conclusions largely ignore the thrust of shipper's criticism of existing service. Shipper (a) asserts that it is attempting to alter the nature of its business by changing from ready-to-wear apparel stores to department stores, and (b) argues that the limited nature of Benmar's authority burdens product line expansion. Considering shipper's presentation, we find a rather detailed listing of goods shipper wishes to merchandise which are beyond the scope of Benmar's "ready-to-wear apparel" authority, such as infants' furniture, lamps, sheets, sporting goods, and toys. It is clear that the changing character of shipper's transportation needs is a significant factor and equally clear that a denial of this application will have a substantial adverse affect [sic] on the shipper's expansion efforts. Weighing the evidence in light of [the] five criteria of section 209(b) we conclude that the application should be granted to the extent set forth in the appendix to this order.
   Order served October 14, 1977.

Subsequent to that filing in this Court the Commission reopened the proceeding on its own motion to consider the issue of dual operations by Consolidated as both a common carrier and a contract carrier.[6] Such dual operations were approved in a modified order served January 27, 1978. After its petition for reconsideration of the Commission's modified order was denied on April 18, 1978, Benmar filed an amended petition for review in this Court.

Ruling that only the initial October 5th order of Division 1 was properly before us, we granted Benmar's petition, vacated the October 5th order and remanded the case to the Commission for further proceedings. The Supreme Court granted certiorari and reversed, holding that we had erred in refusing to consider the two Commission orders served on January 27, 1978, and April 18, 1978. *United States v. Benmar Transport and Leasing Corp.*, 444 U.S. 4, 100 S.Ct. 16, 62 L.Ed.2d 5 (1979) (per curiam). Pursuant to the directions of the Supreme Court we now shift our focus from the timing of the Commission's orders to their merit.

## DISCUSSION

The only issue now remaining in the case is the propriety of the Commission's grant of Consolidated's application for contract carrier authority. Consolidated[7] and the Commission[8] take the position that the grant was reasonable, lawful and supported by substantial evidence and therefore must be upheld. Because we regard Benmar's claims to the contrary as lacking in merit, we affirm.

*Standard of Review*

Our scope of review is narrow. The Administrative Procedure Act, 5 U.S.C. § 706 provides that:

6. At the time of the proceedings before the Commission, Section 210 of the Interstate Commerce Act provided that the Commission could authorize dual operations (the holding of both a certificate as a common carrier and a permit as a contract carrier within the same territory) only upon a determination that such dual operations were consistent with the public interest and national transportation policy. Consequently, the absence of such a finding by the Commission rendered the Division's initial

The reviewing court shall—

. . . . .

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law . . . .

[or]

(E) unsupported by substantial evidence . . . .

*See Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.*, 419 U.S. 281, 285–86, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974); *Cross-Sound Ferry Services, Inc. v. United States*, 573 F.2d 725 (2d Cir. 1978).

Once it has been determined that decisions are supported by substantial evidence,

[a] reviewing court must "consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment. . . . Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency."

. . . . .

The test here is primarily one of rationality. If the Commission based its order on substantial relevant evidence, fairly ascertained, and if it has made no clear error of judgment, this court is not authorized to overturn that order.

*Cross-Sound Ferry Services, Inc. v. United States, supra*, 573 F.2d at 729–30, *quoting*

order granting Consolidated's application defective under § 210. *See* 49 U.S.C. § 310 (repealed October 17, 1978); 49 U.S.C. § 10930.

7. Consolidated has intervened pursuant to 28 U.S.C. § 2348.

8. The Attorney General and the Commission have filed a joint brief in this proceeding. *See* 28 U.S.C. § 2348.

*Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra,* 419 U.S. at 285–86, 95 S.Ct. at 441–442 (citations omitted). *Cf. International Detective Service, Inc. v. I. C. C.,* 613 F.2d 1067, 1073 n. 13 (D.C.Cir. 1979). With this standard in mind, we consider Benmar's attack on the Commission's orders.

*The Scope of Benmar's Authority*

■ Benmar contends that the Commission's action in regard to Consolidated was premised on an arbitrary construction of the permits under which Benmar had been serving Jubilee since 1972. At the time of the Commission's decision in regard to Consolidated, Benmar's existing authority as described in its permits embraced "such commodities as are dealt in by ready-to-wear apparel stores and supplies used in the conduct of such business." The Commission concluded, based on the shipper's uncontradicted presentation, that Jubilee wished to ship several types of merchandise which are beyond the scope of "ready-to-wear apparel" authority, such as sporting goods and lamps.

Benmar argues that the evidence shows that Jubilee and Benmar had always intended the generic "ready-to-wear apparel" rubric "to embrace the complete line of Jubilee's merchandise, and to obviate the need to modify or expand the commodity description each time a new line or product was added to shipper's store inventory." Brief at 16. Not surprisingly, Benmar has offered no authority for the proposition that the intent of the parties to a permit overrides the plain language selected as an expression of that intent. *Cf. Sims Motor Transport Lines, Inc.—Revocation of Certificate,* 72 M.C.C. 355, 359 (1957) (where no patent ambiguity in certificate, no need to go behind it to ascertain intent).

Although many retailers have diversified their operations in recent years—and consumers have become accustomed to finding food sold in pharmacies and drugs sold in grocery stores, for example—we cannot say that the Commission has acted improperly in determining that a distinction yet remains between ready-to-wear apparel stores

and department stores. The cases relied on by Benmar demonstrate only that in the face of this trend the Commission has attempted to be both flexible and realistic in interpreting the authority of contract carriers to provide expanded transportation services for shippers undergoing growth or diversification at a rate typical of such enterprises. These cases do not indicate that the distinctions among various types of merchandisers or generic commodity descriptions have been abolished. Nor do they indicate, more particularly, that the Commission has on other occasions declared sporting goods and lamps, for example, to be within the authority of a permit restricted to ready-to-wear apparel. *Compare* Docket No. MC–115212, *H. M. H. Motor Service Petition for Interpretation of Permit,* served August 4, 1964 (unpublished) and *Renner Motor Lines, Inc. Declaratory Order,* 94 M.C.C. 605 (1964), *with Russell Transfer, Inc.—Petition for Declaratory Order,* 118 M.C.C. 862 (1973). Benmar has failed to demonstrate the arbitrary nature of the Commission's performance of its line drawing responsibility in the case at bar. Under the circumstances, we cannot substitute our judgment for that of the agency. *Cf. Andrew G. Nelson, Inc. v. United States,* 355 U.S. 554, 558, 78 S.Ct. 496, 499, 2 L.Ed.2d 484 (1958); *Hilt Truck Line, Inc. v. United States,* 605 F.2d 1080 (8th Cir. 1979); *Pre-Fab Transit Co. v. United States,* 595 F.2d 384 (7th Cir. 1979); *Chem-Haulers, Inc. v. I. C. C.,* 594 F.2d 166 (5th Cir. 1979); *Dart Transit Co. v. United States,* 567 F.2d 818, 820 (8th Cir. 1977) ("The Commission was specifically created for issuing carrier permits and is the body best suited to determine the extent and coverage of those permits."); *Ballentine Produce, Inc. v. United States,* 209 F.Supp. 679, 683 (W.D.Ark.1962) ("It is our opinion that in an action such as this, a court may not substitute its judgment for that of the Commission with respect to the question of the scope or coverage of a permit which the Commission has issued to a motor carrier, if that question is at all doubtful," *quoting Dart Transit Co. v. I. C. C.,* 110 F.Supp. 876, 880 (D.Minn.)

(three-judge court), *aff'd per curiam*, 345 U.S. 980, 73 S.Ct. 1138, 97 L.Ed. 1394 (1953)).

*Application of Section 209(b)*

Benmar also contends that the Commission improperly applied the criteria of Section 209(b) because it failed to consider the effect of its decision upon Benmar. Yet Division 1 explicitly stated that it was weighing the evidence in light of *all* the criteria listed in Section 209(b), as it is indeed required to do. *I. C. C. v. J–T Transport Co.*, 368 U.S. 81, 88–89, 82 S.Ct. 204, 209, 7 L.Ed.2d 147 (1961). It was not disputed that Benmar would suffer a diversion of traffic if Consolidated's application were granted,[9] and Division 1 did not reject the Board's finding to that effect.

Although section 209(b) requires consideration of the factors, neither it nor the Administrative Procedure Act [10] requires a detailed analysis of each and an explicit weighing of each against the other. The Commission's determination is adequate if logical processes in reaching that decision are reasonably discernible and the essential basic findings are revealed. . . . In a comparable context this court has held that it should uphold agency findings of "less than ideal clarity" if satisfied from the determination that the administrators gave a "hard look" at the relevant issues and if "the

agency's path may reasonably be discerned."

*International Detective Service, supra*, 613 F.2d at 1077 (citations omitted).

It is well settled that a finding of adverse effect on protesting carriers is not determinative when other factors bearing on the public interest and national transportation policy are deemed to outweigh it. *See, e. g., International Detective Service, supra*, 613 F.2d 1067 (shipper's need held to outweigh possible harm to existing carriers). *Cf. Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc., supra*, 419 U.S. at 298, 95 S.Ct. at 448 (common carrier case) ("Our decisions have dispelled any notion that the Commission's primary obligation is the protection of firms holding existing certificates."). Furthermore it is clear from the cases that the Commission may "consider future needs and changes in commerce even when they are uncertain." *Miller Transporters, Inc. v. United States*, 594 F.2d 463, 466 (5th Cir. 1979) (citations omitted). "The weight and credibility of the shipper testimony was a matter for the Commission; it was free to believe that the contemplated needs of the shippers who testified were genuine and significant." *Id.* In a "future needs" case, the ICC's judgment is to be accorded great weight. *Appleyard's Motor Transportation Co. v. I. C.*

**9.** Although Benmar claims that it will suffer a diversion of traffic, it stops short of asserting that its ability to compete will be destroyed. *Cf. May Trucking Co. v. United States*, 593 F.2d 1349, 1356 (D.C.Cir. 1979). Indeed, in Order No. MC–112016 (Sub. Nos. 6, 9, 11, 12 (MI)), *Benmar Transport & Leasing Corp., Petition for Modification*, served June 15, 1978, the Commission granted Benmar's petition to modify its operating authority to allow the carriage of commodities dealt in or used by discount department stores, thereby enabling Benmar to compete on an equal footing with Consolidated for Jubilee's business.

We see no merit in Benmar's argument to the effect that the subsequent modification of its authority has undercut the only basis for the Commission's grant of Consolidated's permit. First, there is no basis for retroactively invalidating on the basis of subsequent events a Commission decision which was proper at the time it was rendered. Second, the decision of the Commission modifying Benmar's permits

reaffirmed the ruling that Benmar's earlier permits did not encompass authority to meet all of Jubilee's future needs. Finally, the Commission's modification of Benmar's permits which has not been appealed by any party, constitutes an implicit recognition that it is in the public interest to have two competing contract carriers serving Jubilee. The statutory criteria for granting permits—the public interest and national transportation policy—both allow consideration of competition. *See International Detective Service, Inc. v. I. C. C.*, 613 F.2d 1067, 1072 (D.C.Cir. 1979), and cases cited therein.

**10.** See 5 U.S.C. § 557(c)(3)(A) (1976) (requiring all adjudicatory-style agency decisions to contain "findings and conclusions, and the reasons [or] basis therefor . . . ").
*International Detective Service, Inc. v. I. C. C., supra*, 613 F.2d at 1077 n. 21 (footnote in original).

C., 592 F.2d 8, 11 (1st Cir. 1979), *citing United States v. Detroit & Cleveland Navigation Co.*, 326 U.S. 236, 241, 66 S.Ct. 75, 77, 90 L.Ed. 38 (1945).

*Procedural Propriety*

 Benmar's remaining contentions are also lacking in merit. First, we do not regard the Commission's refusal to reopen its proceedings for the submission of additional evidence as a ground for setting aside the challenged orders because the new evidence proffered by Benmar is immaterial to the determinative questions in this case: whether Jubilee was planning to expand significantly its lines of merchandise, whether Benmar was authorized by permit to transport these new commodities, and whether Consolidated's permit would further the public interest and national transportation policy. Benmar's failure to claim that Jubilee has sold lamps or sporting goods in the past, or that Benmar has ever shipped such items for Jubilee, or that Jubilee has no intention of selling such items in the future cannot be cured by the proffer of inconclusive documents for the purpose of raising doubt about collateral, nondispositive questions.

Second, the Commission's failure to discuss the authorities cited by Benmar, while disappointing to Benmar, is of no legal significance in light of our conclusion that these cases simply do not stand for the propositions urged by Benmar. Where an agency has not been shown to have repudiated its own rules or norms, there is no "departure" in need of explanation.

Third, although the Administrative Procedure Act requires an agency to include in its decision a statement of "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record," 5 U.S.C. § 557(c), we are not disposed to overturn a sound decision if the agency's path, although not ideally clear, may reasonably be discerned. *Cross-Sound Ferry Services, Inc. v. United States, supra*, 573 F.2d at 730; *International Detective Service, supra*, 613 F.2d at 1077; *Hilt Truck*

*Line, Inc. v. United States, supra*, 605 F.2d at 1082.

CONCLUSION

Benmar has failed to show that the orders of the Commission were arbitrary, capricious, unlawful, an abuse of discretion or unsupported by substantial evidence. Therefore, we affirm.