UNITED STATES ET AL. *v.* BENMAR TRANSPORT & LEASING CORP. ET AL.

No. 78–1602. Decided October 15, 1979

PER CURIAM.

This case is here on certiorari to the United States Court of Appeals for the Second Circuit, which set aside an order of the Interstate Commerce Commission authorizing respondent Consolidated Truck Service, Inc., to begin contract carrier service in competition with respondent Benmar Transport & Leasing Corp. The order, issued October 5, 1977, was defective because it lacked the statutorily required finding that it was consistent " 'with the public interest and with the national transportation policy,' [§ 210] of the Interstate Commerce Act, 49 U. S. C. § 310 [now 49 U. S. C. § 10930 (a) (1976 ed., Supp. II)]." *Benmar Transport & Leasing Corp.* v. *ICC,* 582 F. 2d 246, 248 (1978).

The case was argued in the Court of Appeals on July 17, 1978, and decided August 16, 1978. In reaching its decision,

the Court of Appeals refused to consider two subsequent Commission orders that remedied the defect. The first of these orders, issued with the consent of all interested parties almost six months before oral argument in the Court of Appeals, reopened the administrative proceedings and made the finding required by 49 U. S. C. § 310. The second, issued on April 18, 1978, denied respondent Benmar's petition for administrative review of the former order. This denial became the Commission's final administrative order and had the effect of reaffirming its earlier decision to grant Consolidated's application for a contract carrier permit. Although the question briefed by the parties in the Court of Appeals was whether the order of April 18, 1978, was supported by the evidence, the Court of Appeals declined to examine the question on the ground that the only order properly before it was the defective order of October 5, 1977. It thus vacated the order and remanded the case for further proceedings.

We grant the petition of the United States and the Commission and reverse the judgment of the Court of Appeals. In *American Farm Lines* v. *Black Ball Freight Service,* 397 U. S. 532 (1970), this Court held that the Commission's broad powers to "reverse, change, or modify" its decisions "are plainly adequate to add to the findings or firm them up as the Commission deems desirable, absent any collision or interference with the District Court." *Id.,* at 541. (The applicable statute then provided for review of orders of the Commission by a three-judge District Court, rather than by the Court of Appeals.) Here the Commission's action did not interfere in any manner with the proceedings in the Court of Appeals, and the Commission acted before that court was ready to hear arguments on the merits and before it received the record. All parties concurred in the Commission's decision to reopen the proceedings and to hold judicial review in abeyance pending the Commission's final disposition of Benmar's petition for administrative review. The position of the

parties—both those who prevailed and those who lost before the Commission—is convincingly demonstrated by the fact that no party has filed a brief in support of the decision reached by the Court of Appeals.

As the Court said in *American Farm Lines, supra,* "[t]he concept 'of an indivisible jurisdiction which must be all in one tribunal or all in the other may fit' some statutory schemes, . . . but it does not fit this one." 397 U. S., at 541. After the abolition of the "forms of action" in the early common law, it was said that "[t]he forms of action we have buried, but they still rule us from their graves." F. Maitland, The Forms of Action at Common Law 2 (1936). Orderly rules of procedure are necessary in order that appellate review may be had of agency findings, but empty formalities devoid of either substantive or procedural benefit have no place in the normal scheme for administrative review unless Congress chooses to place them there. Here Congress has quite clearly not chosen to impose such virtually meaningless requirements as the Court of Appeals insisted upon.* The judgment of the Court

---

*The dissenting opinion makes the bald statement that "[t]he ICC simply ignored the time limits established by the Court of Appeals and thereby prevented judicial review altogether. The Court of Appeals was not ready to hear argument and had not received the record solely because the ICC did not deign to comply with the scheduling orders of the court." The opinion of the Court of Appeals, *Benmar Transport & Leasing Corp.* v. *ICC,* 582 F. 2d 246 (1978), lends no support to this statement. Respondent Benmar petitioned the court to set aside the Commission's order but consented along with other interested parties to the reopening of the Commission proceedings before the record had been filed with the Court of Appeals or oral argument heard by that court. After the Commission completed these proceedings, it issued its final order of April 18, 1978—an order which was reviewable by the Court of Appeals pursuant to 28 U. S. C. §§ 2341–2349. The Court of Appeals thus was not deprived of its jurisdiction over this dispute. Rather, for no apparent reason other than to insist that the parties comply with an "empty formality," the Court of Appeals stated in its opinion that "when an agency seeks to reconsider its

of Appeals is inconsistent with the spirit which animated *American Farm Lines* v. *Black Ball Freight Service, supra,* and is therefore

*Reversed.*

MR. JUSTICE MARSHALL, dissenting.

The Court today summarily reverses the judgment of the United States Court of Appeals for the Second Circuit setting aside an order of the Interstate Commerce Commission which concededly lacked a statutorily required finding. The Court takes this action because of two subsequent orders which the Commission issued after the petition for review had been filed with the Court of Appeals without seeking the permission of that court or taking any of the proper procedural steps. I dissent.

Since the procedural timetable involved in this case is important to the issue presented, it is necessary to set out more fully the proceedings below. Respondent Benmar Transport & Leasing Corp. filed a petition to review the order of the ICC with the Court of Appeals on January 13, 1978. There were no petitions for reconsideration still pending at that time. Thereafter, counsel for Benmar notified the ICC that the order was patently defective because of the lack of a statutorily required finding. The ICC on its own motion reopened the administrative proceedings on January 27, 1978, and made the necessary statutory finding. The parties then filed a motion in the Court of Appeals for an extension of

action, it should move the court to remand or to hold the case in abeyance pending reconsideration by the agency." 582 F. 2d, at 248. If such action were necessary in order to avoid genuine interference "in any manner with the proceedings in the Court of Appeals," *supra,* at 5, we would have a different case. But since we conclude that there was no such interference, the mere fact that application for reopening was not made to the Court of Appeals was not fatal when all interested parties consented to such reopening. See *American Farm Lines* v. *Black Ball Freight Service,* 397 U. S. 532 (1970).

time in which to file the record and briefs, and an extension was granted until March 8, 1978. Benmar filed an administrative petition for reconsideration and for reopening the ICC proceedings for receipt of new evidence on February 27, 1978. The reply to this petition was not filed with the ICC by respondent Consolidated Truck Service, Inc., until March 16, 1978—well after the deadline for filing the record and briefs with the Court of Appeals. Meanwhile, on March 7, 1978, the day before the record and briefs were due to be filed with the court, the ICC moved to have further judicial proceedings held in abeyance pending the Commission's disposition of Benmar's petition. Before the Court of Appeals could rule on this motion, the Clerk of that court was informed by Benmar's counsel that as an alternative to the motion to hold the action in abeyance Benmar intended to withdraw the petition for judicial review subject to reinstatement within 30 days after the disposition of the administrative petition. Benmar and the ICC attempted to draft a stipulation to that effect, but no stipulation was ever filed with the court. On April 18, 1978, the ICC denied Benmar's petition for reconsideration, thus making the January 27 order final. Benmar then filed an amended petition for judicial review, and a new schedule for filing the record and briefs had to be established by the court.

In light of this procedural history, it is astounding that the majority can assert that "the Commission's action did not interfere in any manner with the proceedings in the Court of Appeals, and the Commission acted before that court was ready to hear arguments on the merits and before it received the record." The ICC simply ignored the time limits established by the Court of Appeals and thereby prevented judicial review altogether. The Court of Appeals was not ready to hear argument and had not received the record solely because the ICC did not deign to comply with the scheduling orders of the court. The Commission did not even bother to move for

a second extension. Such actions by a litigant should not be condoned by this Court.*

The case upon which the majority relies so heavily, *American Farm Lines* v. *Black Ball Freight Service*, 397 U. S. 532 (1970), is not controlling. In that case there was a multiparty proceeding before the ICC. Some carriers filed petitions for reconsideration before the Commission, but while those petitions were pending other carriers filed for judicial review. The District Court temporarily restrained operation of the ICC's original order but did not affect the pending administrative petitions. For those parties whose petitions were pending before the Commission, there was "no final action" and the ICC retained "jurisdiction to *complete* the administrative process." *Id.*, at 541 (emphasis added). It was for this reason that "both tribunals have jurisdiction" of the matter. *Ibid.*, quoting *Wrather-Alvarez Broadcasting, Inc.* v. *FCC*, 101 U. S. App. D. C. 324, 327, 248 F. 2d 646, 649 (1957). This Court stressed, however, that the Commission "did not act inconsistently" with the court but rather had acted "in full harmony with the court's jurisdiction." 397 U. S., at 541–542.

This concurrent-jurisdiction concept is inapplicable in the present case. At the time the petition for judicial review was filed no petitions for reconsideration were pending before the ICC. The administrative proceedings were complete and the

---

*In light of the conceded facts that after one extension the record and briefs were to be filed with the Court of Appeals by March 8, 1978, and that the ICC did not even render its revised final order until April 18, 1978, much less file the record and briefs, it does not require specific language in the lower court's opinion for this Court to be aware of the necessary conclusion that judicial review was delayed by the actions of the Commission. The majority's repeated assertion that there was no interference with the proceedings in the Court of Appeals simply ignores the procedural history below. The fact that Benmar consented to the ICC's actions does not change the fact that these litigants, like all other litigants, owe an obligation to the court not to delay judicial proceedings.

order was final as to all parties. In addition, as already noted, the ICC here did not act in full harmony with the jurisdiction of the Court of Appeals. Instead, the Commission through its actions simply forced the court to forgo the proper exercise of its jurisdiction until the ICC and the other litigants decided for themselves that they would file the record and briefs. The decision in *American Farm Lines* was not meant to give the Commission the power to stall judicial review. Contrary to the assertions of the majority, preventing the court from being effectively deprived of jurisdiction through the willful actions of litigants ignoring proper scheduling orders hardly constitutes "empty formalities." Since this Court today encourages the ICC to interfere with the proper exercise of jurisdiction of the Court of Appeals, I dissent.