Joseph H. GREEN, Jr., Appellant,

v.

LOUIS FIREISON & ASSOCIATES,
Appellee.

No. 91–CV–505.

District of Columbia Court of Appeals.

Submitted June 8, 1992.
Decided Dec. 30, 1992.

Kenneth Shepherd was on the brief for appellant.

Louis Fireison and Daniel Blum were on the brief for appellee.

Before TERRY, Associate Judge, and REILLY and GALLAGHER, Senior Judges.

REILLY, Senior Judge:

Before us is an appeal from a judgment adopting an order imposing sanctions against appellants, Joseph H. Green and Kenneth Shepherd, in the amount of $2,550.15 because Green's complaint in an action for damages to recover a contingent fee from his former client, had joined as a codefendant the law firm (Fireison) which had replaced him.[1] In granting Fireison's motion, contending that the complaint was filed and signed in violation of Rule 11 (Super.Ct.Civ.R. 11), the judge's order stat-

1. This case was filed here as a motion for summary reversal and a motion for summary affirmance, but as both movants in their respective supporting memoranda expressed willingness to have the court treat these documents as briefs on appeal, we have accepted this suggestion.

ed that it appeared "that this action was not well grounded in fact or law formed after reasonable inquiry." He ordered the movant to file an itemized list of fees and costs incurred and gave the opposing parties two weeks after such filing to respond to the itemization. Appellants elected instead to file a request for reconsideration of the original order, supported by a memorandum citing authorities in other jurisdictions which recognized similar claims for relief by lawyers against lawyers who had replaced them in litigation which they had originally been authorized to undertake. The judge adhered to his original conclusion, and stating that no objection had been made to any of the items on movant's list, ordered payment of the entire sum. We reverse.

## I.

The events which culminated in the challenged order for sanctions may be briefly summarized as follows.

On May 27, 1986, appellant Green was retained by Mrs. Janet Isaacs to prosecute a claim for damages for injuries incurred in an automobile accident the week before, assertedly caused by the negligence of the driver of the other vehicle. She signed a contract captioned "Agreement with Attorney for Contingent Fee" which assigned a "lien of one third [of any recovery] if settled and or 40 percent if litigated." [R. 221]

Green conducted an investigation, looking into police, hospital, and medical records, and interviewing possible witnesses. Learning that the other vehicle involved in the accident was covered by liability insurance, he then negotiated directly with agents of the carrier, Montgomery Mutual Insurance Co., which eventually on June 15, 1987, offered to settle the claim for $23,000. Dissatisfied with this offer, Mrs. Isaacs rejected it. Two weeks later she notified Green that he was discharged and instructed him to turn over his file to Fireison, the law firm she retained to replace him. More than a year later, Fireison in-

formed her that the carrier had raised its offer to $30,000. Mrs. Isaacs accepted, and sometime in December 1988, the carrier disbursed the agreed-upon amount.

Before such disbursement, Green having been unsuccessful in persuading Mrs. Isaacs, the insurance company, and Fireison to recognize that the fee to which he claimed he was entitled constituted a lien against the proceeds of the impending settlement, commenced an action against Mrs. Isaacs in the Superior Court on November 15, 1988, by filing a complaint captioned "Complaint for Breach of Contract." This pleading, citing the contingent fee contract with Mrs. Isaacs, and the settlement offer he had obtained from the insurance carrier, alleged that she had rejected plaintiff's lien and right to compensation. The complaint also joined as defendants Fireison and Montgomery Mutual. It alleged that Fireison in succeeding plaintiff as counsel for Isaacs was "bound by the contract and obligated to honor plaintiff's lien," and that notwithstanding its previous negotiations with Green, resulting in a settlement offer to be paid by a "draft drawn to the order of Isaacs and ... Green, her counsel," it was now repudiating plaintiff's lien. The concluding sentence demanded judgment against the joint defendants "joint and severally in the amount of $7,660, plus costs." [2]

In its answer, the insurance carrier conceded that it had dealt with Green concerning the Isaacs claim, and had offered to settle it for $23,000. It also admitted that Green had notified it of his alleged lien, but that it refused to recognize such a claim, contending that no such lien exists by common law or statute. About a month later the carrier followed up this contention by filing a motion for judgment on the pleadings on the ground that it was not bound by the contingent fee contract between Green and Isaacs, and therefore the complaint had not stated a cause of action against the company. The supporting memorandum cited *Lyman v. Campbell*, 87 U.S.App.D.C. 44, 182 F.2d 700 (1950), for

---

**2.** This figure was obviously based upon the calculation that Green was entitled to one-third of the settlement offer he had negotiated, but which his client had rejected.

the proposition that no lien attached to money obtained by a client unless it was in the possession of the claiming attorney or was the subject of a judgment which the court could hold as security upon motion of the claimant.

The memorandum also noted—relying on the caption of the complaint—that Green was suing for breach of contract, but was not alleging any contract between himself and the insurance company. Instead of opposing the motion, Green filed a praecipe dismissing this particular defendant. Entry of the dismissal order enabled the carrier to disburse the settlement money without regard of the plaintiff's claim.

Some two months later, Fireison having staved off his obligation to answer the complaint by filing a motion to quash service against him—denied by Judge Fauntleroy—decided to follow the example of his codefendant, the insurance carrier, by moving for judgment on the pleadings.[3] To support the motion for dismissal as a codefendant, Fireison filed a memorandum advancing the same arguments the insurance carrier had put forward, *viz.:* that (1) there was no breach of contract as Green had not alleged any contract between Fireison and him, and (2) no lien existed. As support for the latter contention, Fireison copied five paragraphs, which included the citation of authorities, from the text of the codefendant's memorandum, without acknowledging the source (cf. R. 35–36 with R. 55–57). This time the motion was referred to another member of the trial bench, Judge Murphy, who granted Fireison's motion, noting that it was unopposed.[4]

Fireison's next step was to file a motion for sanctions under Rule 11, *supra,* against Green and his counsel, arguing that it was "unconscionable for two members of this Court to burden this Court with a law suit in which plaintiff could have no possible hope of prevailing. That plaintiff himself recognized this is demonstrated by his failure to oppose a motion for judgment. . . . This is a law suit which should never have been brought in the first place." (R. 65)

Green responded with an opposition, pointing out that Fireison knew of the contingent fee contract with Isaacs, and the services that Green had performed for her, citing a letter from Fireison written after the case file was turned over to him in which he stated that in the event of a settlement or verdict they would "work this out in an amicable manner." He argued that notwithstanding this commitment, Fireison kept all of the attorney fees thereby becoming "unjustly enriched and now seeks the aid of this honorable Court for further unjust enrichment."

These pleadings were referred to a third motions judge, Judge Levie. In a summary order granting the motion, he noted "it further appearing that this action was *not well grounded in fact or law formed after reasonable inquiry.*" (Emphasis supplied; Order of June 20, 1989, R. 75). The order then required the movant to submit an itemized list of fees and costs by July 3, 1989, and another two weeks for plaintiff and his counsel to respond to the itemization. Fireison filed the itemization which asserted a "usual and customary rate of $150 per hour," listed other time spent on 15 different occasions, and money expended, claiming a total of $2550.15. In-

3. Fireison who was also representing Mrs. Isaacs had also filed on behalf of his client a motion to quash service.

4. Both memoranda quoted two paragraphs from *Lyman v. Campbell, supra,* 87 U.S.App.D.C. at 45–46, 182 F.2d at 702. Had Green drawn the attention of the motions judges to the next paragraph of the *Lyman* opinion, *id.* at 46, 182 F.2d at 702, they would have been aware that the holding was not really dispositive of the lien issue in the instant case, for the *Lyman* court pointed out that under District law "a charging lien does not attach to a particular fund not in the attorney's possession *unless there is* . . . an agreement that the attorney should be paid out of it." The court noted that Lyman conceded that his claim did not arise out of any agreement or assignment. *Id.* at 46–47, 182 F.2d at 702. In contrast, appellant Green's agreement with his client did specify the assignment of a lien. *See* p. 186, *supra.* In a recent opinion, we rejected the contention that *Lyman* must be read to hold that an attorney's charging lien attaches only to the proceeds of a judgment, holding that it attached to a settlement as well. *Elam v. Monarch Life Insurance Co.,* 598 A.2d 1167, 1169–70 (D.C.1991).

stead of filing specific objections to any of these items, Green responded with a memoranda arguing that Judge Levie's previous order was erroneous. This time he argued that not only was the right of a discharged attorney to sue a former client for breach of contract well established by law in this jurisdiction (citing decisions of this Court), but also that other courts which have considered the issue, have held that the discharged attorney is entitled to share in the fee paid to his successor, drawing to the motions judge's attention decisions in three other jurisdictions—New York, Florida, and the Court of Appeals for the Fifth Circuit—requiring apportionment of a fee between original and replacement counsel. Accordingly, he contended that in light of these holdings, and Fireison's failure to cite any authority in the District or elsewhere to the contrary, the plaintiff had a basis for joining Fireison as a defendant in his suit.

In a three-page memorandum captioned "Order," Judge Levie rejected what he termed plaintiff's motion for relief from judgment or order pursuant to Super.Ct.Civ.R. 60(b). Conceding that the authorities cited by Green indicated that an outgoing attorney may be entitled to an apportionment of the net contingent fees, the court held that these cases did not "support the broader argument that replacement counsel may be sued for breach of the contract entered into between the client and former counsel." The court, then noting absence of opposition to Fireison's itemized list, held the expenses reasonable and ordered Green to pay the full sum claimed. It is from this order, dated July 27, 1989, subsequently incorporated into a judgment, that Green has appealed.[5]

## II.

In our opinion, the order imposing sanctions was fatally defective, as the court overlooked an important requisite in the rule which authorizes judges to take such action. As we have pointed out, the court's only finding was that the complaint was "not well grounded in fact or law formed after reasonable inquiry." (R. 95). The text of the rule (Super.Ct.Civ.R. 11) reads:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion or other paper; that to the best of the signer's knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law *or a good faith argument for the extension, modification, or reversal of existing law,* and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. If a pleading, motion, or other paper is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the pleader or movant. If a pleading, motion, or other paper is signed in violation of this Rule, the Court upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, including a reasonable attorney's fee. [Emphasis supplied.]

As the foregoing text discloses, Rule 11 is not violated solely because a particular pleading is not warranted by ex-

5. The first appeal from Judge Levie's order was dismissed as premature as no final judgment had been reached on the claim against the remaining defendant, Mrs. Isaacs, whom Fireison represented. The case then dragged on in the Superior Court with each side filing interrogatories, motions to compel answers, and other discovery pleadings including a motion by Green for the production of documents. On July 31, 1990, Fireison filed a motion to withdraw appearance, on the ground that his client failed to appear for office conferences, would not answer telephone calls or respond to his letter. This motion was granted over Green's objection, although Mrs. Isaacs neither retained new counsel nor entered a *pro se* appearance. Green then moved for summary judgment on his claim and Isaacs' counterclaim. This motion was unopposed and granted by Judge Kotelly. After an ex parte hearing on damages, judgment in the amount of $7,666.00 for Green was entered. As this was a final judgment, it enabled Green to renew and perfect his appeal from the sanctions order.

189

isting law. If such pleading can be justified by a good faith argument for the extension, modification, or reversal of existing law, sanctions are not in order. Judge Levie apparently overlooked this alternative justification for the challenged complaint, when he failed to make any finding on this point. The imposition of sanctions cannot be sustained unless the court makes findings on all the relevant issues stated in Rule 11. *Kleiman v. Aetna Casualty & Surety Co.,* 581 A.2d 1263, 1266 (D.C.1990). *See also Montgomery v. Jimmy's Tire & Auto Center,* 566 A.2d 1025, 1028–30 (D.C. 1989).[6]

In correctly treating Green's opposition to the order as a request for reconsideration, Judge Levie had an opportunity to correct the defects in his original determination before issuing his supplementary order. He did not do so, although he did make additional findings. In his opposition papers, Green had drawn the attention of the court to decisions in other jurisdictions holding that a replaced attorney may be entitled to an apportionment of the contingent fee of successor counsel who has effected a recovery for his client. Judge Levie noted that two of these cited cases, *Seal v. Pipeline, Inc.,* 731 F.2d 1194 (5th Cir.1984), and *Sammon v. Green,* 63 A.D.2d 872, 405 N.Y.S.2d 466 (1978), did support this proposition but rejected these authorities as grounds for reversing his original order, stating:

> These cases, however, do not support plaintiff's broader argument that replacement counsel may be sued for breach of the contract entered into between the client and former counsel. While plaintiff may have had at one point, a cause of action against Mr. Fireison, it was not for breach of contract. [R. 100–101]

6. Insofar as the original order rested in part on the finding that the action was "not well grounded in fact," such order was also flawed. As the movant for sanctions had previously filed a motion to dismiss, all the facts alleged in the complaint were conceded.

7. Certainly the liberal application given the Federal Rules of Civil Procedure by the courts of

■ We are perplexed as to why the judge concluded that Green was advancing the "broader argument" that successor counsel could be sued for breach of contract. This was not precisely the way the issue was framed. Neither the complaint nor the supporting papers filed in opposition to the sanctions motion alleged that Fireison was a party to the Isaacs/Green contingent fee contract. It is true that the complaint stated that Fireison, being aware of such contract, the lien and the work performed, was "bound by plaintiff's contract." [R. 12] Fairly read in context, however, what the complaint was asserting was that Fireison was causing Isaacs to engage in breach of contract—a claim sounding in tort (third party interference with a contractual obligation), not in contract. This appears to us the theory advanced for joining Fireison as defendant in the law suit. It might have been the basis for Judge Levie's concession that Green may have had a cause of action against replacement counsel "at one time." If so, under our modern procedural rules we do not regard as improper the joinder of a contract claim against one defendant and a tort claim against another in the same complaint, as fatal to an action at law.[7]

■ So far as the record indicates, the only basis for the premise that Green was suing Fireison for breach of contract was the caption on the complaint, which did indeed use those words. We have repeatedly held, however, that it is not the label on a pleading which is crucial, but rather what it actually says. In a recent case, *Martin v. United States,* 614 A.2d 51, 53 (D.C.1992), this court citing *Wallace v. Warehouse Employees Union No. 730,* 482 A.2d 801, 804 (D.C.1984), held that "the nature of a motion is determined by the relief sought, not by its label or caption." We have applied the same principle to com-

this jurisdiction for the past half century, has rendered obsolete the widely quoted observation that "the forms of action we have buried but they still rule us from their graves." F. MAITLAND, THE FORMS OF ACTION AT COMMON LAW 2 (1936), cited in *United States v. Benmar Transport & Leasing Corp.,* 444 U.S. 4, 6, 100 S.Ct. 16, 17, 62 L.Ed.2d 5 (1979).

plaints. In *Lee v. Foote*, 481 A.2d 484, 487 n. 8 (D.C.1984), we said that the "legal label for the relief sought is not controlling so long as the complaint complies with Super.Ct.Civ.R. 8 to put defendant on notice regarding the nature of the claim," and in *Simpkins v. Brooks*, 49 A.2d 549 (D.C.Mun.App.1946), held that if a complaint states a claim, regardless of what is it called, plaintiff is entitled to trial. In short, the worst that can be said of the complaint here is that with respect to the claim against Fireison, it was mislabeled.

Ordinarily in reviewing Rule 11 orders where the findings essential to the imposition of sanctions were not made by the motions court, we have remanded the case with instructions to make additional findings. Such remands make it possible for the court to dispose of the unresolved issues by making additional findings, thereby providing this court, if sanctions are still imposed with knowledge of the precise grounds on which the order rests. In this case, however, we deem such a remand unnecessary as we do not see how it could be possible on this record to hold that the disputed joinder of Fireison was not founded in a good faith argument for extension of existing law.

■ Appellant Green is on solid ground in saying that when a person who has retained a lawyer and agreed to pay a specified fee discharges him without cause, such lawyer has a right to recover compensation for the services rendered. Following precedents established in this jurisdiction long before our court was created, we have held that substantial performance by such lawyer entitles him to recover his agreed upon contingent fee even though the final recovery is brought about by successor counsel. *Kaushiva v. Hutter*, 454 A.2d 1373, 1374 (D.C.), *cert. denied*, 464 U.S. 820, 104 S.Ct. 83, 78 L.Ed.2d 93 (1983); *accord, In re Waller*, 524 A.2d 748, 750 (D.C.1987).

While these holdings dealt only with client liability, we do not regard as frivolous appellant's claim to a lien on the recovery requiring the fee claimed by successor counsel to be apportioned with his predecessor. Such a claim protects clients, who have retained more than one lawyer, from having to pay multiple legal fees. *See Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53 (Mo.1982). To induce the courts of this jurisdiction to adopt and apply such rule, it was logical for appellant to join Fireison as a codefendant.

■ Granted the absence in this jurisdiction at the time the complaint was filed of any controlling precedent supporting appellant's lien theory, none of the parties have drawn to our attention any appellate decisions in the District squarely rejecting such a claim.[8] As the motions judge conceded, there are decisions in other states (e.g., two cases cited *supra*) which recognize such a cause of action. It is true that in filing his complaint, appellant advanced no argument, but the rules of the Superior Court do not require a plaintiff to bolster a complaint with a memorandum of points and authorities. Such memoranda are not called for unless the adverse party files motions. It is true, of course, that a Superior Court judge might have dismissed plaintiff's novel theory of action, had he deemed the holdings in other states on which plaintiff relied as ill reasoned or untrustworthy guideposts. But the mere fact that a complaint is demurrable is not a ground for the imposition of sanctions under Rule 11. *See Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90 (3d Cir.1988) (failure to describe anti-trust claim as one seeking an extension of existing law did not warrant imposition of sanctions). Hence, we reverse the order.[9]

Appellant also characterizes as excessive the total claimed for attorney fees and expenses by Fireison—the sum of

---

**8.** It was not until after the challenged order imposing sanctions here had been entered that our court published *Elam, supra* note 4, recognizing that an attorney's lien could be created in a pending settlement by an insurance carrier.

**9.** In *Jimmy's Tire, supra*, 566 A.2d at 1029, we pointed out (citing *Westmoreland v. CBS*, 248

U.S.App.D.C. 255, 261–62, 770 F.2d 1168, 1174–75 (1985)), that "a decision on whether a paper is supported by law or a good faith argument for a change in the law is subject to *de novo* review because the issue is strictly one of law." As we have decided that this question must be answered in the affirmative, there would be no point in a remand.

$2,550.15—which the court allowed noting that no specific objection to any of the items listed on the statement had been filed. In view of our disposition, we need not determine this issue, except to observe in passing that the account submitted appears grossly padded, even accepting as true Fireison's assertion that his usual hourly rate was $150. For example, using this figure to compute his itemization, Fireison claimed a total of $464 for travel time and parking incident to the filing of two motions with the court. Obviously this is not a claim for professional work, but for messenger service. If the claimant's own time was indeed as valuable as he asserts, he could have avoided this charge by using the mails or a courier. Moreover, the memorandum of points and authorities filed with the motions judge previously assigned to the case by the insurance carrier to support its motion for judgment on the pleadings reveal that far from engaging in independent legal research in the preparation of his own motion papers for similar dismissal, Fireison merely paraphrased the argument of the codefendant insurance carrier and lifted from the memorandum the citation of authorities. Yet the claimant charged more than $600 for time assigned to these supposed labors. He was also given more than $500 for the work involved in the motion for sanctions, although Rule 11 itself allows reimbursement only for reasonable expenses "incurred because of the filing of the [improper] pleading."

█ In making these observations, we are not unmindful of the heavy workload imposed on judges assigned to civil motions because of the huge numbers of cases placed on that calendar. Hence, we must emphasize that no conscientious lawyer in asking motions judges to approve bills of costs or fees against adversary parties should include in such claims items which could not be justified in criminal justice vouchers or probate accounts.

Reversed.