*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

### UNITED STATES
Appellee

**v.**

### Alex J. SECORD, Staff Sergeant
United States Army, Appellant

**No. 24-0217**
Crim. App. No. 20210667

Argued January 28, 2025—Decided July 30, 2025

Military Judges: G. Brett Batdorff (arraignment)
and Travis L. Rogers (trial)

For Appellant: *Scott R. Hockenberry*, Esq. (argued); *Captain Amir R. Hamdoun* and *Daniel Conway*, Esq. (on brief); Major Robert D. Luyties.

For Appellee: *Captain Dominique L. Dove* (argued); *Colonel Richard E. Gorini* (on brief); Major Patrick S. Barr.

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, and Judge JOHNSON joined. Judge MAGGS filed a separate dissenting opinion.

————————

Judge HARDY delivered the opinion of the Court.

The Government charged Appellant with multiple offenses related to alleged use of cocaine with junior enlisted soldiers and related conduct. Pursuant to a search and seizure authorization, the Government seized Appellant's cell phone but was unable to access any of the cell phone's data because the phone was encrypted and passcode protected. Citing Rule for Courts-Martial (R.C.M.) 701(a)(2), Appellant moved to compel the Government to give Appellant unilateral and unrestricted access to the cell phone, arguing that the Government had a duty to do so because the data on the cell phone was "within the possession, custody, or control of military authorities." The military judge denied Appellant's motion but offered Appellant the opportunity to obtain the data if the Government was provided equal access. Appellant rejected this offer, and the parties proceeded to trial without either having access to the cell phone data. A general court-martial convicted Appellant of all the charged offenses and the United States Army Court of Criminal Appeals (ACCA) affirmed the convictions. We granted review of three issues:

> I. Where the Government seized and held Appellant's phone pursuant to a narrow search authorization, but could not access the data without Appellant's passcode, was the data within the possession, custody, or control of military authorities for purposes of R.C.M. 701?

> II. Did the military judge err by ruling Appellant could not access the data without simultaneously providing the Government with full access to all his personal data?

> III. If the military judge erred, did the error constitute prejudicial error?

*United States v. Secord*, 85 M.J. 195 (C.A.A.F. 2024) (order granting review).

Because we agree with the military judge that R.C.M. 701(a)(2) did not require the Government to give Appellant access to the data on the seized cell phone, we answer the first granted issue in the negative and therefore

do not reach the second and third granted issues. Accordingly, we affirm the decision of the ACCA.

## I. Background

At the time of his offenses, Appellant was a staff sergeant assigned to the same unit as MB, a junior enlisted soldier. Appellant communicated with MB via his cell phone to facilitate their use of cocaine. On three occasions in August 2020, MB paid Appellant via CashApp on her cell phone for cocaine that they used together at MB's off-post apartment. Appellant's CashApp account recorded the receipt of funds on the same dates. At least two other junior enlisted soldiers, Specialists BA and AF, observed Appellant's cocaine use at MB's apartment in August 2020. Appellant separately tested positive for cocaine use in September 2020 and March 2021 after a command-directed urinalysis test.

During the investigation into Appellant's cocaine-related activities, the Army Criminal Investigation Division (CID) seized Appellant's cell phone pursuant to a search and seizure authorization and placed it into airplane mode. The authorization ordered a forensic search of Appellant's cell phone for "SMS, MMS messages, photos, and videos for evidence pertaining to the wrongful use, possession and distribution of cocaine." Despite having physical possession of Appellant's phone, the Government's efforts to search for digital evidence of his alleged crimes failed because the Government could not unlock his phone. Appellant's phone was protected by a password or personal identification number (PIN), which Appellant refused to provide to the Government. The Government attempted to forcibly extract the cell phone data without the PIN but was unable to do so because its extraction software was not compatible with Appellant's iPhone.

Seeking access to his own cell phone data, Appellant filed a discovery request with the Government requesting "an immediate opportunity to inspect [Appellant's] cell phone and for the Defense's Digital Forensic Examiner to conduct a digital extraction of [Appellant's] cell phone within the bounds of confidentiality." After the Government denied the request, Appellant filed a motion with the

military judge to compel discovery of the cell phone data arguing that he was entitled to as equal an opportunity as the Government to examine the cell phone data in the preparation of his defense. The motion demanded that the Government provide Appellant's digital forensic examiner (DFE) with the cell phone to comport with the requirement that Appellant have equal opportunity to examine the device for evidence that could be favorable, be used for the purposes of impeachment, or be otherwise material. Appellant also demanded that the defense DFE's inspection be confidential, and that the Government not be permitted to install any tracking software on the cell phone. Appellant's motion to compel discovery provided no facts about what specific data was on the phone or how that data might assist Appellant's defense.

The Government responded, arguing that it had not unreasonably impeded access to the cell phone because the phone was evidence of criminal activity and the Government had a legitimate interest in maintaining sole custody and control over the phone. Further, the Government argued that—because it could not break into the phone—both parties had equal access to the digital evidence (i.e., none), and granting the defense motion would result in Appellant having greater access to the cell phone data than the Government. Finally, the Government argued that forcing the provision of the phone to Appellant without Appellant providing the PIN to the Government would run contrary to defense counsel's obligation to disclose evidence.

The military judge granted Appellant's motion in part and denied Appellant's motion in part, ruling that both parties had equal access to the data, which was no access. Additionally, he made no clear determination whether Appellant had met his burden to prove by a preponderance of the evidence that the data was relevant, only stating that it was "understandable that the Government would be reluctant to completely turn over sole physical possession of that which is evidence of a crime." The military judge then held that if Appellant provided the defense DFE with the PIN to the cell phone, then both parties' forensic examiners could inspect the cell phone in concert, with equal and sim-

4

ultaneous access to any data that would be extracted. Specifically, the military judge would allow "the Defense DFE to inspect the cell phone in concert with a CID representative at CID headquarters." Under the military judge's proposal, Appellant himself would not be provided with access to the cell phone, and the Government would be prohibited from installing any tracking software. However, the military judge also held that if Appellant declined to provide his PIN to allow the mutual collection of his cell phone data by both the Government and the defense, then Appellant's motion would be denied in its entirety. Appellant was provided with one week to make the decision, and Appellant ultimately decided not to provide his PIN.

The Government never succeeded in gaining access to the cell phone, so both parties proceeded to trial without the benefit of the data stored on the phone. An enlisted panel sitting as a general court-martial convicted Appellant, contrary to his pleas, of one specification of violation of a lawful general regulation and five specifications of wrongful use of a controlled substance (cocaine) in violation of Articles 92 and 112a, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 892, 912a (2018).

On appeal, Appellant challenged the military judge's ruling in response to Appellant's motion to compel discovery as an abuse of discretion. Reviewing the Rules of Courts-Martial governing the disclosure of discovery by the Government and defense, the ACCA observed that:

> Rules for Courts-Martial 701(a) and 701(b) appear to contemplate that the data in question is in the current physical "possession, custody, or control" (ie [sic]: capable of being immediately reviewed and in a format that it could be presented as an exhibit for identification at trial) of one of the parties at the time of the discovery request by the party not in possession.

*United States v. Secord*, No. ARMY 20210667, 2024 CCA LEXIS 263, at *7, 2024 WL 3200593, at *3 (A. Ct. Crim. App. June 26, 2024) (unpublished). Based on this interpretation, the ACCA held that the cell phone data was not subject to the disclosure requirements of R.C.M. 701(a), and

that the military judge's ruling on the defense's motion was not an abuse of discretion.

## II. Standard of Review

The interpretation of a provision of the R.C.M. is a question of law that this Court reviews de novo. *United States v. Hunter*, 65 M.J. 399, 401 (C.A.A.F. 2008).

## III. Discussion

Appellant's primary argument before this Court is a simple one based on the plain language of R.C.M. 701(a). He argues that because his cell phone is undisputedly in the physical "possession, custody, or control of military authorities," R.C.M. 701(a)(2)(A), the encrypted data stored on that phone must also be within the Government's possession, custody, or control. Accordingly, under a straight-forward application of the rule, the Government must permit Appellant to inspect the data, in this case, by allowing the defense DFE to extract and review the data without sharing it with the Government. Appellant also argues that the ACCA's decision conflicts with this Court's recent decision in *United States v. Strong*, 85 M.J. 58 (C.A.A.F. 2024). Appellant asserts that under *Strong*, the Government seized his cell phone data and therefore had the data within its possession, custody, or control. For the reasons set forth below, we disagree with both arguments.

### A. Rule 701(a)(2)(A)

R.C.M. 701 governs discovery in courts-martial, and R.C.M. 701(a) imposes obligations on trial counsel to provide certain things—including electronic data—to the defense. As relevant to this case, the rule states:

> (A) After service of charges, upon request of the defense, the Government shall permit the defense to inspect any books, papers, documents, *data*, photographs, tangible objects, buildings, or places, or copies of portions of these items, if the item is within the possession, custody, or control of military authorities and—
>
> . . . .
>
> (iv) the item was obtained from or belongs to the accused.

6

R.C.M. 701(a)(2)(A) (emphasis added). With respect to access to evidence, the rule further requires that "[e]ach party shall have adequate opportunity to prepare its case and equal opportunity to interview witnesses and inspect evidence." R.C.M. 701(e). When analyzing R.C.M. 701, we have observed that "[t]he military rules pertaining to discovery focus on equal access to evidence to aid the preparation of the defense and enhance the orderly administration of military justice." *United States v. Roberts*, 59 M.J. 323, 325 (C.A.A.F. 2004).

Noting R.C.M. 701(a)'s use of the disjunctive "or," Appellant argues that the rule applies if the data on his phone is *either* within the Government's "possession," within the Government's "custody," or within the Government's "control." Given this broad language and the Government's undisputed possession, custody, *and* control of Appellant's physical cell phone, Appellant argues that—under the plain language of R.C.M. 701(a)—the data on the cell phone must also be within the Government's possession, custody, or control.

We agree with Appellant about the disjunctive nature of the language in R.C.M. 701(a). But like the vast majority of federal civilian courts that have considered the same question in the context of the nearly identical Federal Rule of Criminal Procedure 16,[1] we disagree with the premise

---

[1] *See United States v. Gray*, No. 21-CR-713 (PAE), 2024 U.S. Dist. LEXIS 64314, at *12 n.6, 2024 WL 1526368, at *5 n.6 (S.D.N.Y. Apr. 9, 2024) ("the *contents* of an encrypted device are not within the Government's possession, custody, or control for purposes of Rule 16 or *Brady*"); *United States v. Reid*, No. 20-CR-00626 (PMH), 2024 U.S. Dist. LEXIS 87761, at *26-28, 2024 WL 2159848, at *8 (S.D.N.Y. May 14, 2024) (same); *United States v. Young*, No. 23-cr-208 (MJD/ECW), 2024 U.S. Dist. LEXIS 36922, at *12-16, 2024 WL 913308, at *4-5 (D. Minn. Mar. 4, 2024) (same); *United States v. Abouammo*, No. 19-cr-00621-EMC-1, 2022 U.S. Dist. LEXIS 223931, at *67-72, 2022 WL 17584238, at *21-23 (N.D. Cal. Dec. 12, 2022) (same); *United States v. Case*, No. 1:19-cr-00360-BLW-2, 2020 U.S. Dist. LEXIS 131397, at *6-10, 2020 WL 4227554, at *3-4 (D. Idaho July 23, 2020) (same). *But see United States v. Andrade*, No. 20-cr-00249-RS (LB), 2024 U.S. Dist. LEXIS 85342, at *2-5 (N.D. Cal. May 10, 2024) (discovery order).

that when the government has physical possession of a cell phone, it is also automatically in "possession, custody, or control" of the cell phone's data for the purposes of R.C.M. 701.

We acknowledge that there is an appealing, plain language approach to this question based on the broad language in the rule, especially if one analogizes a password-protected cell phone to a locked container. But we note that the Supreme Court has differentiated the data stored on a cell phone from physical records and has described efforts to draw such an analogy as "a bit strained." *See Riley v. California*, 573 U.S. 373, 393-97 (2014) (observing that the search of a person's cell phone would expose to the government far more than the most exhaustive search of the person's house). Following this logic, this Court has recognized that the digital contents of a cell phone and the physical cell phone itself are distinct with respect to legal questions such as admissibility, search, and seizure. *See, e.g., United States v. Mitchell*, 76 M.J. 413, 420 (C.A.A.F. 2017) (holding that although the appellee's physical iPhone was admissible, the digital contents of the phone were inadmissible); *Strong*, 85 M.J. at 65 (holding that "the seizure of Appellant's iPhone did not constitute seizure of the digital content of the iPhone"). Accordingly, we do not accept Appellant's assertion that the Government's possession, custody, or control of a physical cell phone necessarily establishes the Government's possession, custody, or control of the data on that cell phone for the purposes of R.C.M. 701.

Lawyers often describe property rights as a "bundle of sticks," referring to the aggregate collection of powers and rights associated with a property interest. *See United States v. Craft*, 535 U.S. 274, 278 (2002) (first citing Benjamin Cardozo, *The Paradoxes of Legal Science* 129 (Lawbook Exchange 2000) (1928); then citing *Dickman v. Commissioner*, 465 U.S. 330, 336 (1984)). Among these rights, the Supreme Court has noted that "the right to exclude is 'universally held to be a fundamental element of the property right,' and is 'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Cedar Point Nursery v. Hassid*, 594 U.S. 139, 150 (2021) (quoting *Kaiser Aetna v. United States*, 444 U.S.

8

164, 176, 179-180 (1979)). In this case, both Appellant and the Government had the power to exclude the other from accessing the cell phone data. Only Appellant knew the PIN that would unlock the phone, but the Government controlled all physical and electronic access.

Considering this stalemate, it is not clear why the Government would be considered to have any greater possessory interest in the cell phone data than Appellant for discovery purposes. Beyond being able to exclude Appellant from the cell phone data, the Government's relationship to the data was extremely limited. Without Appellant's cooperation, the Government had no access of any kind to the cell phone data. Indeed, the Government did not know for certain whether there was any data on the Appellant's cell phone at all. But assuming that the cell phone did contain digital data, the Government could not review the data, use the data in its investigation, proffer the data as evidence at trial, or share the data with anyone else. The ability to exclude others (including Appellant) from accessing the cell phone data was the lone "stick" in the Government's property rights bundle.

In our view, this one property right (which was equally shared with Appellant) was not a sufficient level of "possession, custody, or control" to trigger the Government's discovery obligations under R.C.M. 701(a). Moreover, R.C.M. 701(e) requires that both the Government and the defense shall have equal opportunity to inspect evidence as it prepares their respective cases for trial. *See also Roberts*, 59 M.J. at 325 (highlighting the discovery rules' focus on equal access to evidence). Concluding that inaccessible cell phone data is in the "possession, custody, or control" of the Government, and thereby requiring the Government to provide an accused with unilateral access to that data, would be inconsistent with the requirements of R.C.M. 701(e).

### B. *United States v. Strong*

Appellant also argues that under this Court's decision in *Strong*, 85 M.J. at 64-65, the Government had seized and therefore possessed the data on his cell phone. In *Strong*, we held that law enforcement had not yet seized cell phone

data—despite having seized the physical cell phone—when the cell phone's owner retained the ability to remotely delete the data. *Id.* at 67 (noting that "law enforcement had not yet established 'a fair degree of dominion or control over the [digital content]'" (alteration in original) (citation omitted)). Appellant argues that under *Strong*'s logic, the Government in this case has seized his cell phone data because—unlike in *Strong*—the Government had cut off Appellant's access to the data including his ability to delete it. Appellant makes a compelling case that his cell phone data had been seized under the Fourth Amendment, but we disagree that it was therefore necessarily also within the Government's possession, custody, or control for the purposes of R.C.M. 701(a).

We reject this argument because we do not believe that seizure under the Fourth Amendment and "possession, custody, and control" under R.C.M. 701(a) are coterminous legal standards. Rather, they are different concepts with distinctly different aims. The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Because "the rights of privacy and personal security protected by the Fourth Amendment . . . are to be regarded as of the very essence of constitutional liberty," *Harris v. United States*, 331 U.S. 145, 150 (1947) (internal quotation marks omitted) (quoting *Gouled v. United States*, 255 U.S. 298, 304 (1921)), courts rigorously enforce this constitutional protection from unreasonable seizures. Accordingly, this Court has held that "[a] seizure of property occurs when there is some meaningful interference with an individual's possessory interests in that property." *United States v. Hahn*, 44 M.J. 360, 362 (C.A.A.F. 1996) (internal quotation marks omitted) (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984)). Nothing more is required.

However, even if data has been seized under the Fourth Amendment, that does not demand that the data is in the "possession, custody, or control of military authorities" for purposes of R.C.M. 701. This is because discovery is a practical process focused on fairness and "intended to eliminate pretrial gamesmanship, minimize pretrial litigation, and

10

reduce the potential for surprise and delay at trial." R.C.M. 701(a)(1) Discussion. As noted above, the goal of R.C.M. 701 is to provide the parties with equal access to the evidence, not to protect the accused from unreasonable government searches and seizures. We see no reason why property must be considered in the Government's "possession, custody, or control" for discovery purposes any time there is "some meaningful interference" with an accused's possessory interests in that property. *Hahn*, 44 M.J. at 362.

### C. Conclusion

In this case, the Government lawfully seized Appellant's cell phone pursuant to a search and seizure authorization based upon probable cause. However, because the Government could neither unlock nor break into the cell phone, the Government had no access to the data stored on the phone. The ACCA concluded that the cell phone data was therefore not within the "possession, custody, or control of military authorities" under R.C.M. 701(a). *Secord*, 2024 CCA LEXIS 263, at *8-9, 2024 WL 3200593, at *3. We agree that the mere fact that the Government possessed Appellant's cell phone and had the ability to exclude Appellant from any data on that phone did not—without more—trigger the Government's discovery obligations under R.C.M. 701(a) with respect to the cell phone data.[2] Because R.C.M 701(a) did not impose any requirements on the Government, Issues II and III are moot.

### IV. Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.

---

[2] Appellant also argues that the ACCA erred in concluding that that electronic data must be in a military authority's "current *physical* 'possession, custody, or control' " for the requirements of R.C.M. 701(a) to apply. *Secord*, 2024 CCA LEXIS 263, at *7, 2024 WL 3200593, at *3 (emphasis added). It is not clear what "physical" possession of electronic data means in a practical sense or how physical possession would be relevant to the R.C.M. 701(a) analysis. We accordingly express no opinion on the relevance of the physical possession of electronic data and leave that as an open question for a future case.

Judge MAGGS, dissenting.

I think that the Court should answer all three granted questions in the affirmative and set aside, rather than affirm, the decision of the United States Army Court of Criminal Appeals. I therefore respectfully dissent.

## Granted Issue I

Rule for Courts-Martial (R.C.M.) 701(a)(2)(A) grants the accused a right to "inspect any . . . data . . . within the possession, custody, or control of military authorities."[1] The first granted issue is: "Where the Government seized and held Appellant's phone pursuant to a narrow search authorization, but could not access the data without Appellant's passcode, was the data within the possession, custody, or control of military authorities for purposes of R.C.M. 701?" I answer this question in the affirmative because, in my view, the data on the phone was in the "custody" of the Army Criminal Investigation Command (CID).

The disjunctive listing of the words "possession, custody, or control" in R.C.M. 701(a)(2)(A) implies that military authorities can have "custody" of data even if the military authorities do not "possess" or "control" the data. But what does it mean for military authorities to have "custody" of data? Neither the *Manual for Courts-Martial, United States* (2019 ed.) (*MCM*), nor the Uniform Code of Military Justice (UCMJ), contains a relevant definition of

---

[1] R.C.M. 701(a)(2)(A) states in relevant part:

> (A) After service of charges upon request of the defense, the Government shall permit the defense to inspect any books, papers, documents, *data*, photographs, tangible objects, buildings, or places, or copies of portions of these items, if the item is within the possession, custody, or control of military authorities and—
>
> . . . .
>
> (iv) the item was obtained from or belongs to the accused.

R.C.M. 701(a)(2)(A) (emphasis added).

"custody."[2] The Government, in its brief, also does not offer any definition of the term. The Court, therefore, must interpret the term "custody" according to its ordinary meaning.

For helpful guidance in determining the ordinary meaning of words, the Court typically consults dictionaries. *United States v. Valentin-Andino*, __ M.J. __, __ (5) (C.A.A.F. 2025). The first definition of "custody" in a leading legal dictionary is "care and control of a thing or person for inspection, preservation, or security." *Custody*, *Black's Law Dictionary* (12th ed. 2024). And the first definition of "custody" in a leading nonlegal dictionary is similar: "the act or duty of guarding and preserving (as by a duly authorized person or agency): Safekeeping." *Merriam Webster's Unabridged Dictionary*, https://unabridged.merriam-webster.com/unabridged/custody (last visited July 30, 2025).

Based on the general tenor of these definitions, I agree with Appellant's argument that CID had "custody" of the data on his phone even if it could not access the data. CID held Appellant's phone specifically for the purpose of guarding, preserving, and safekeeping the data on the phone. Trial counsel argued to the military judge: "Our purpose of maintaining sole custody and control of the phone is to maintain the phone's evidentiary value for use and further prosecution of other individuals both known and unknown to the government, who may have conducted dealings with [Appellant]." Trial counsel further expressly stated that CID had "sole custody of the information on the phone." I agree with trial counsel's assessment. Because the data belonged to Appellant and because CID was in

---

[2] The President has defined "custody" with respect to persons. *MCM* pt. IV, para. 12.c.(4)(a) ("Custody is restraint of free locomotion imposed by lawful apprehension. . . . Custody is temporary restraint intended to continue until other restraint (arrest, restriction, confinement) is imposed or the person is released."); *see also* R.C.M. 305(d) Discussion ("Custody is restraint which is imposed by apprehension and which may be, but is not necessarily, physical.").

"custody" of the data, Appellant had a right to inspect the data under R.C.M. 701(a)(2)(A).

## Granted Issue II

The second granted issue is: "Did the military judge err by ruling Appellant could not access the data without simultaneously providing the Government with full access to all his personal data?" Although the Court does not reach this question, I answer it in the affirmative. The military judge's order went too far, in my opinion, because it conditioned Appellant's right to inspect his phone on his giving the Government access to more data than the Government's search authorization allowed.

Under R.C.M. 701(g)(1), the military judge could "specify the time, place, and manner of making discovery and . . . prescribe such terms and conditions as are just." And under R.C.M. 702(g)(2), the military judge could "order that the discovery or inspection be denied, restricted, or deferred, or make such other order as is appropriate." Here, in response to Appellant's motion to inspect the data in CID's custody, the military judge ruled:

> This motion is partially granted only in the event the accused voluntarily decides to disclose his PIN to your expert. In that voluntary event, your expert would then need to go down to CID as you described, to access the phone, but they would do so in concert with the government's forensics expert. *Together, the government and your expert would have equal and simultaneous access to the data and information that is extracted.* The phone will not be surrendered to defense in this event, only offered for mutual inspection and extraction.

(Emphasis added.)

The conditions that the military judge placed on Appellant's right to inspect the data on his phone were neither "just" under R.C.M. 702(g)(1) nor "appropriate" under R.C.M. 702(g)(2). A magistrate in this case had issued a search authorization that only allowed the Government to view "SMS, MMS messages, photos, and videos for evidence pertaining to the wrongful use, possession and distribution of cocaine." The military judge's order, however, allowed the Government to look at *anything* in the phone

that the defense chose to inspect. As Appellant argues, nothing in R.C.M. 701 or the UCMJ required the defense to provide the Government with access to data for which the Government had not shown probable cause and had not obtained a search authorization. The military judge's order left Appellant with two choices: either to forgo his right of inspection or to provide the Government with access to data on his phone beyond the scope of its search authorization. Under such circumstances, Appellant's right to inspect evidence was made contingent on giving up his protections under the R.C.M., UCMJ, and Fourth Amendment. The military judge's order was therefore an abuse of discretion.

The Government, for its part, does not argue that it could exceed the search authorization when inspecting the phone. The Government asserts in its brief that "[o]nce appellant had access to the phone, the government was legally allowed to access and view *the responsive data on the phone pursuant to the magistrate's search authorization*." (Emphasis added.) Similarly, the Government argues that its right under R.C.M. 701(e) to an "equal opportunity" to "inspect [the] evidence," would only be exercised "*pursuant to the magistrate's authorization*." (Emphasis added.) If the military judge had limited the Government's access to only the data within the search authorization, the answer to the second granted question might very well be different. But that is not how the military judge ruled in this case.

### Granted Issue III

The third granted question is: "If the military judge erred, did the error constitute prejudicial error?" Although the Court also does not address this question, I answer it in the affirmative. The Government had the burden to prove the discovery violation was not prejudicial, and it did not meet this burden.

This Court's precedents have established: "Where an appellant demonstrates that the Government failed to disclose discoverable evidence in response to a specific request . . . , the appellant will be entitled to relief unless the Government can show that nondisclosure was harmless beyond a reasonable doubt." *United States v. Roberts*, 59 M.J. 323,

327 (C.A.A.F. 2004) (citing *United States v. Hart*, 29 M.J. 407, 410 (C.M.A.1990)). The Court has further stated that its "appellate assessment of [the] impact [of a discovery violation] is no different regardless of whether the discovery issue was ruled on by the military judge under R.C.M. 701(g)(2) or whether it arose from a Government decision to withhold certain evidence that was not discovered until after trial." *Id.* at 327 n.3.

Because Appellant's phone remains locked, the record obviously does not establish its contents. The Government, however, acknowledged at trial that Appellant may have a good faith basis for believing that the phone contains exculpatory evidence. Given this possibility, the Government has not met its burden to prove that the discovery error was harmless beyond a reasonable doubt.

**Conclusion**

For these reasons, I would set aside the decision of the United States Army Court of Criminal Appeals and set aside the findings and sentence in this case.